The Trustees of the Freeholders and Commonalty of the Town of Southampton, Respondents, *v.* Nathan C. Jessup, Appellant, et al.

1. Town of Southampton — Right to Make a Roadway across Great South Bay is a Franchise. The right, created by a resolution of the trustees of the town of Southampton, vested by royal charters granted in colonial days, with title and sovereignty over the waters of Great South Bay, in that town, and the lands thereunder, authorizing a riparian proprietor "to make a roadway and to erect a bridge" across the bay, the said bridge to be a drawbridge, and providing that there shall be no unnecessary delay to those navigating the waters of the bay, is a franchise, as distinguished from a license or an easement.

2. Character of Roadway Authorized by Grant. Any reasonable and ordinary roadway, such as a solid embankment of earth, is authorized by such a resolution, as a roadway to be made over lands under water includes more than a mere right of way, and of necessity contemplates a structure resting on the land and extending above the water, and, in the absence of specifications in the grant, confers upon the grantee of the franchise the right to make it out of the materials in common use for the construction of roads, such as earth and stone.

3. Erection of Temporary Structure. The grantee of the franchise under such resolution waives no right by building a temporary structure in the first instance.

*Trustees of Southampton* v. *Jessup,* 10 App. Div. 456, reversed.

(Argued February 1, 1900; decided February 27, 1900.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 10, 1896, affirming a judgment in favor of plaintiffs entered upon a decision of the court after a trial at Special Term.

This action was brought to enjoin the defendant from excavating, embanking or otherwise interfering with lands under the waters of Great South Bay at Potunk Point, in the town of Southampton, county of Suffolk, and to recover damages for alleged trespasses of like character already committed. The answer justified the acts of the defendant under authority from the secretary of war and under a resolution duly adopted by the plaintiffs on the 2d of June, 1888, of which the following is a copy :

" *Resolved,* that Nathan C. Jessup be and is hereby given liberty to make a roadway and to erect a bridge across the Great South Bay, commencing at the south point of Potunk Neck, thence running southerly to the beach, the said bridge to be a drawbridge, of a width of not less than twenty feet, the height above the meadow three feet, and the draw to be twenty feet wide, and the said Nathan C. Jessup shall not cause any unnecessary delay to those navigating the waters of said bay."

The defendant further alleged that he had erected the bridge authorized by said resolution; had permanently built a portion of the roadway, at great expense, and for the rest of the distance had erected a temporary structure on piles, intending to replace it by a permanent and substantial roadway, and that he had been delayed in completing it by an injunction but recently vacated.

Upon the trial it appeared that the width of the bay at the locality in question is about 350 feet, and that when this action was commenced, the defendant, for a distance of more than 200 feet from the south shore nearly to the bridge, had constructed a solid roadway thirty feet wide and three feet high, by excavating the earth from the bottom on either side and throwing it into the middle. There is no tide at this point and the water is very shoal, varying in depth from six inches to a foot and one-half. When the wind blows from the west the water is forced eastward, where the bay is half a mile wide, and sometimes floods the highways and the cellars of the houses on the uplands. It was claimed by the plaintiff that a solid roadway would obstruct the reflow of the water to its accustomed level, but that the wooden structure on piles would have no such effect. It was claimed by the defendant that a solid roadway would necessarily obstruct the flow of water one way as much as the other, and hence would prevent the water from flowing eastward to a great extent and thus save the uplands from inundation.

The trial judge, by a decision which did not separately state the facts found, directed judgment for an injunction and for

the sum of $450 damages, stating as the grounds that "the
resolution of the board of trustees of the town of Southamp-
ton, set forth in the answer and proven upon the trial, did not
authorize or permit the defendant to construct a solid embank-
ment or roadway across said lands; that it was the intention
of the said trustees and of the defendant that there should be
constructed a roadway, built of timber upon piles driven into
the mud and water; that such resolution was so construed and
acted upon by the parties, and the acts of the defendant com-
plained of were without authority, and consequently consti-
tuted a trespass." Judgment was entered accordingly, and
after affirmance by the Appellate Division the defendant
appealed to this court.

*David B. Hill* and *Charles M. Stafford* for appellant. The
resolution in question conferred a franchise or easement and not
a mere license. (*Baldwin* v. *Taylor*, 166 Penn. St. 507; *Mum-
ford* v. *Whitney*, 15 Wend. 381; *Sweeney* v. *St. John*, 28 Hun,
638; *Babcock* v. *Utter*, 1 Keyes, 417; *Mendenhall* v. *Klinck*,
51 N. Y. 246; 8 Am. & Eng. Ency. of Law, 585; 2 Washb. on
Real Prop. 19, 25; 3 Kent's Com. [12th ed.] 458; *Langdon* v.
*Mayor, etc.*, 93 N. Y. 130; *Milhau* v. *Sharp*, 27 N. Y. 611;
*G. L. & P. J. R. R. Co.* v. *N. Y. & G. L. R. R. Co.*, 134
N. Y. 439; *T. & T. T. R. Co.* v. *Campbell*, 44 Cal. 89.)
The authority to make the roadway and erect the bridge car-
ries with it, necessarily, a right of ingress and egress, a right
of way to and over the roadway and bridge. (*Green* v. *Put-
nam*, 8 Cush. 29; *Hooper* v. *Farnsworth*, 128 Mass. 487;
*Oliver* v. *Dickinson*, 100 Mass. 114; *Langdon* v. *Mayor, etc.*, 93
N. Y. 129; *Voorhees* v. *Burchard*, 55 N. Y. 98; *Huttemeier*
v. *Albro*, 18 N. Y. 48; *Richardson* v. *Bigelow*, 15 Gray, 154;
*C. R. Bridge* v. *Warren Bridge*, 7 Pick. 462; *Winchester* v.
*Osborne*, 62 Barb. 342; *Doyle* v. *Lord*, 64 N. Y. 432;
*Huntington* v. *Asher*, 96 N. Y. 613.) The resolution was
sufficient to authorize the appellant to make a solid roadway,
as well as to erect a bridge, and to dig in the lands under
water and use that land in the making of such roadway,

and the erection at the outset of a temporary structure did not affect this right. (*Selden* v. *D. & H. C. Co.*, 29 N. Y. 640; *Adams* v. *Emerson*, 6 Pick. 57; *Tucker* v. *Tower*, 9 Pick. 108; *Huntington* v. *Asher*, 96 N. Y. 605, 613; *R. P. Co.* v. *Westcott*, 28 Am. St. Rep. 249.) Even if the resolution should be regarded as conferring a license and not a franchise, still, as it contemplated expensive improvements of a permanent nature, and the defendant having expended a large sum of money in the construction of such improvements and in reliance upon such resolution, it must be regarded under such circumstances as irrevocable. (*Vannest* v. *Fleming*, 18 Am. St. Rep. 387; *Flickinger* v. *Shaw*, 87 Cal. 126; *Grimshaw* v. *Belcher*, 22 Am. St. Rep. 298; *Clark* v. *Glidden*, 60 Vt. 702; *Wickersham* v. *Orr*, 9 Iowa, 253; *Rhodes* v. *Otis*, 33 Ala. 578; *Huff* v. *McCauley*, 53 Penn. St. 206; *McBroom* v. *Thompson*, 25 Ore. 559; *G. L. & P. J. R. R. Co.* v. *N. Y. & G. L. R. R. Co.*, 134 N. Y. 435.) A license, even if revocable, is effectual to justify everything which may be done under it prior to its revocation; and no damages are recoverable on account of such acts. (*Selden* v. *D. & H. C. Co.*, 29 N. Y. 634; *Miller* v. *A. & S. R. R. Co.*, 6 Hill, 61; *Pratt* v. *Ogden*, 34 N. Y. 20; *Pierrepont* v. *Barnard*, 6 N. Y. 279; *Syron* v. *Blakeman*, 22 Barb. 336; *Walter* v. *Post*, 6 Duer, 363.)

*Thomas Young* for respondents. The resolution does not authorize the construction of a solid embankment. The permission granted by it was exhausted by the first roadway the defendant built. (*Cowles* v. *Kidder*, 24 N. H. 364; *Carleton* v. *Redington*, 21 N. H. 291, 293.)

VANN, J. The roadway in question is one of the approaches to the same bridge that was recently the subject of controversy in this court, and was built under the authority of the resolution then under consideration. (*People ex rel. Howell* v. *Jessup*, 160 N. Y. 249.) We held in that case that the plaintiffs in this action, through the Andros and Dongan charters, became vested with "a title and sovereignty over the waters,

and the lands thereunder, at and opposite Potunk Point, that enabled them to permit the doing of all things that a government may do for the benefit of its people," and that they had power to adopt said resolution.

Neither party challenges that decision, but both recognize it as sound law, so that no question now arises as to the power of the plaintiffs in the premises. They differ, however, as to the meaning and effect of the resolution, the plaintiffs claiming that it is a mere license, revocable at will, while the defendant insists that it is a franchise or easement, or, if a license, irrevocable after he had acted upon it at a large expense.

A license is a personal, revocable and non-assignable privilege, given by writing or parol to one, without interest in the lands of another, to do one or more acts of a temporary nature upon such lands. (*Greenwood Lake, etc., R. R. Co.* v. *N. Y. & Greenwood Lake R. R. Co.*, 134 N. Y. 435, 440, and cases cited.) "Although originally revocable at the will of the licensor, it may become irrevocable through the expenditure of money by the licensee." (Id.)

An easement is a permanent right conferred by grant or prescription, authorizing one landowner to do or maintain something on the adjoining land of another, which, although a benefit to the land of the former and a burden upon the land of the latter, is not inconsistent with general ownership. (*Long Island R. R. Co.* v. *Garvey*, 159 N. Y. 334, 338, and cases cited.)

A franchise is a grant by or under the authority of government, conferring a special and usually a permanent right to do an act, or a series of acts, of public concern, and, when accepted, it becomes a contract and is irrevocable, unless the right to revoke is expressly reserved. (*People ex rel. Atty.-Genl.* v. *Utica Ins. Co.*, 15 Johns. 357, 387 ; *Bank of Augusta* v. *Earle*, 13 Pet. 519, 595 ; *California* v. *Pacific R. R. Co.*, 127 U. S. 1, 40.) These definitions, while not comprehensive enough to cover all cases, are sufficient for the case in ·hand.

The right in question is not a license, because it is neither

temporary nor personal, as the drawbridge and roadway authorized are substantial, fixed and permanent improvements, for the benefit of defendant's lands, and assignable therewith. It would fall under the definition of an easement if it had been granted by an ordinary landowner and not by a body holding lands under water in trust for the public. We think it is a franchise, because it was granted in the exercise of a governmental power conferred by royal charter in colonial days. (*People ex rel. Howell* v. *Jessup, supra.*) It is a special privilege, because it is not of common right; is permanent, because there is no limitation as to time, and is of public concern, because it relates to the public domain. A roadway necessarily includes a right of way, which, when granted by a legislative body, is a franchise. The resolution has the same effect as if a like privilege had been granted by act of the legislature in relation to similar lands held by the state for public use. A grant by the resolution of a legislative body is as effective as a grant by deed of an executive body and is the usual form in which franchises are conferred.

In construing this franchise we are not to lose sight of the principle that a grant from the public, so far as it is ambiguous, is to be construed in the interest of the public, and hence in favor of the grantor, and not, as in ordinary cases, in favor of the grantee. (*Syracuse Water Co.* v. *City of Syracuse,* 116 N. Y. 167, 178; *Mayor* v. *Starin,* 106 N. Y. 1, 19; *Wells* v. *Garbutt,* 132 N. Y. 430, 435.) This principle, however, is to be applied only when doubt arises, for when the meaning is clear there is no room for construction. While the resolution specified the kind, and to some extent the dimensions of the bridge, as well as its height above the meadow, it did not specify the kind of material out of which it was to be made. The roadway is not described except as to its length, but the resolution, as well as the attending circumstances, show that it was to be built out of some kind of material. The defendant was not to erect a bridge and roadway, but to *make* a roadway and *erect* a bridge. The latter had to be an elevated structure in order to pass over the channel and not

obstruct navigation, while the former could be a solid bank of earth. A roadway to be made over lands under water includes more than a mere right of way, for of necessity it contemplates a structure resting on the land and extending above the water. In the absence of specifications in the grant, the defendant had the right to make a roadway out of the materials in common use for the construction of roads, such as earth and stone. Wood is not ordinarily used for the purpose, and the right conferred was not to build a viaduct, but make a roadway, which is generally solid from the ground up. If the plaintiffs wished to limit the defendant to a wooden structure, resting on piles, which would have been more like a bridge than a roadway, they should have said so. The resolution is silent upon the subject, for the words "height above the meadow, three feet," refer to the bridge, and whatever was said between the parties before it was passed, assuming it to be admissible, showed that the defendant wished to build a solid roadway on the south side, such as he had already built on the north side. He applied orally to the plaintiffs for authority to build a roadway and bridge. They went over the ground with him, saw the situation, advised with the neighbors at a public meeting, and on receiving the consent of all but one out of over two hundred, granted his application, specifying the kind of bridge, but making no specification as to the roadway. There is no evidence to support the conclusion of the trial judge that it was the intention of the parties to have the roadway built of timber. As the affirmance by the Appellate Division does not appear to have been unanimous, we have searched the record for evidence bearing upon the question, but find that nothing was said or done to indicate such an intention. No method of construction was suggested in the preliminary interview, except as already mentioned, when the defendant pointed to what he had done and stated what he wanted to do. One out of the thirteen trustees testified that he did not hear the defendant say "he was going to build a bridge there of dirt," while the others were not sworn. Assuming that the trial judge was not

bound to believe the defendant, because he was interested, still this silence is significant, and if the defendant's evidence is rejected, there is nothing left on the question of intention except the resolution itself.

The effect of a solid roadway in holding the water back, after a heavy storm, was not spoken of, so far as appears, and if the plaintiffs had wished protection from such a result, they doubtless would have made provision for it in the resolution, the same as they did with reference to protecting the navigation of the channel. They took no such precaution and cannot now enjoin the defendant because they failed to do what they might have done.

The doctrine of election, on which the Appellate Division relied to some extent, but upon the theory that the right conferred was only a license, does not apply to a franchise, and the doctrine of practical construction, relied upon by the Special Term, has no application, because the wooden structure was but temporary, as we must assume, since the defendant so testified, and by a ruling of the court based upon the objection of the plaintiffs, duly excepted to, was prevented from giving further evidence upon the subject. A temporary structure in the form of trestlework, for immediate use and as an aid in building a bridge, is common in improvements of this character, and as there was no express limitation as to time, the defendant had a reasonable time to complete the work. The injunction from the Federal court, which he was prevented from showing by the objections of the plaintiffs, was a material fact for the consideration of the court upon the question. The grant of an easement or franchise carries with it whatever is essential to its enjoyment and confers the right to repair and rebuild. (*Roberts* v. *Roberts*, 55 N. Y. 275; *Huntington* v. *Asher*, 96 N. Y. 613; Washburn on Easements, 39, 565.) The defendant waived no right under his franchise by building a temporary structure in the first instance.

We think the defendant had the right to build any reasonable and ordinary roadway, such as an embankment of earth, but whether he could dig upon the land of the plaintiffs in

17

order to get the material is open to question, and as the matter has not been fully argued we do not now decide it. The evidence suggests, but does not show, that the earth and sand of the roadway may, unless confined in its place, ultimately wash away somewhat and result in the formation of sand bars which will obstruct navigation. We pass upon no question relating to this subject. The complaint should not be dismissed because the investigation upon the trial under review was not thorough enough to exhaust the facts and a new trial may develop a different situation in some respects.

The judgment should be reversed and a new trial granted, with costs to abide the event.

PARKER, Ch. J., GRAY, BARTLETT, MARTIN and WERNER, JJ., concur; CULLEN, J., not sitting.

Judgment reversed, etc.