(64 App. Div. 525.)

## TRUSTEES OF FREEHOLDERS AND COMMONALTY OF TOWN OF SOUTHAMPTON v. JESSUP.[1]

(Supreme Court, Appellate Division, Second Department. October 18, 1901.)

EVIDENCE—ORAL—FRANCHISES—CONSTRUCTION OF ROAD.

> Where a franchise was granted defendant "to make a roadway and to erect a bridge across the Great South Bay," and the roadway was constructed on piles, which the defendant, a number of years later, attempted to fill in on the ground that the open structure was originally intended to be only temporary, and to be made permanent by the filling, which was denied by the trustees of the town granting the franchise, oral evidence as to what was said and done by the parties at the time the franchise was granted and at the time the work was originally completed and inspected was admissible in a suit to enjoin the filling in of the bay.
>
> Goodrich, P. J., dissenting.

Appeal from special term, Suffolk county.

Action by the trustees of the freeholders and commonalty of the town of Southampton against Nathan C. Jessup. From a judgment in favor of the plaintiffs, the defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Charles M. Stafford, for appellant.
Thomas Young, for respondents.

HIRSCHBERG, J. In affirming the judgment in this action we adopt the opinion of Mr. Justice Wilmot M. Smith at special term, with this addition: On the first trial of this action the judgment in favor of the plaintiffs was based upon the theory that the resolution passed by the trustees of the town of Southampton, by virtue of which the defendant constructed the roadway and bridge which are the subject of controversy, was a mere license, and as such revocable at pleasure. The court of appeals decided that it amounted to a franchise, and accordingly reversed the judgment, and granted a new trial. Trustees v. Jessup, 162 N. Y. 122, 56 N. E. 538. Judge Vann, writing for the court of appeals, laid considerable stress upon the fact that none of the trustees testified upon that trial as to the character of the roadway which the defendant was authorized to build so far as the same may have been understood and declared at the time the franchise was granted. The trustees insist that it was the intention at that time that the roadway should be open to the pass-

[1] For opinion below, see 72 N. Y. Supp. 780.

age of the waters of the Great South Bay, and not a solid embankment obstructing navigation; but, as Judge Vann pointed out, the franchise, by its terms, was specific and unambiguous as to the kind of bridge which the defendant was authorized to build. viz. a drawbridge of specified dimensions, but made "no specification as to the roadway." As a matter of fact, however, the defendant constructed an open roadway immediately upon receiving the franchise, and it was many years thereafter that he commenced the work of changing it into a solid embankment, which work is enjoined by the judgment now under consideration. In the opinion of Judge Vann the silence of the trustees on the former trial—that is, their failure to testify as to the intention of the parties on the subject of the kind of roadway to be built under the franchise—was significant, leaving nothing on the question of intention except the resolution itself. On this trial the trustees testified that the intention of both the parties, the trustees and the defendant, was that the roadway should be of wood, and open to the water's flow. If this evidence is competent,—as the dictum referred to would appear to indicate,—the judgment appealed from is abundantly supported. In our opinion, it is competent and controlling evidence quite independently of the question whether it may be permitted in order to explain any supposed ambiguity in the language of the resolution, or to supplement its terms. The resolution clearly allows the defendant to build but one roadway or bridge. He acted under it in building the original roadway, and if that structure, as then built, was in accordance with the intention of the parties at the time the franchise was given, and was intended by the defendant at that time to be a completed and permanent structure, exhausting the authority conferred, he could not, without an additional franchise, lawfully change its character years afterwards to the manifest detriment of the inhabitants of the town, and against the wishes of the trustees. His contention is that the original open structure was but a temporary matter, which he then designed to subsequently make permanent in character by filling in with earth and other material. The trustees contend otherwise, and upon this disputed question of fact it seems clear that evidence may lawfully be received as to what was said and done by the parties at the time the franchise was applied for and granted, as well as at the time the work was originally completed and inspected. The defendant's claim that the structure was temporary, and that he intended from the outset to ultimately fill it in, is asserted in the amended answer, and it was competent for the plaintiffs to forestall it by proof that the structure as first built was what the defendant intended to build in accordance with the understanding existing at the time he acquired his rights, and that he impliedly admitted that fact when the work was done. In this view the evidence is overwhelming that the defendant did not build the open roadway as a temporary structure, but as a permanent creation, in full accord with the intention of both parties at the time, and as a practical exposition of the defendant's understanding of the nature and effect of the rights conferred upon him, and of the full scope and purport of his franchise.

The judgment should therefore be affirmed upon the law and facts, with costs. All concur, except GOODRICH, P. J., who dissents.

GOODRICH, P. J. (dissenting). I entertain views of this case different from those of my associates. The action was commenced in June, 1895, and was tried in December, 1895, when a judgment was rendered in favor of the plaintiffs. On appeal this court affirmed the judgment. 10 App. Div. 456, 42 N. Y. Supp. 4. An appeal was taken to the court of appeals, which reversed the judgment, and ordered a new trial. 162 N. Y. 122, 56 N. E. 538. At the second trial a judgment was again rendered for the plaintiffs, and the appeal now comes to us. It is unnecessary to recapitulate the facts out of which the controversy arises, as they are fully stated in the volumes cited. For convenience of discussion, however, I quote the language of the resolution under which the defendant claims his rights, reading as follows:

"Resolved, that Nathan C. Jessup be, and is hereby, given liberty to make a roadway and to erect a bridge across the Great South Bay, commencing at the south point of Potunk Neck; thence running southerly to the beach. The said bridge to be a drawbridge, of a width of not less than twenty feet, and the draw to be twenty feet wide. And the said Nathan C. Jessup shall not cause any unnecessary delay to those navigating the waters of said bay."

The judgment enjoins the defendant "from digging, excavating, embanking, or otherwise disturbing the lands under the waters of the Great South Bay at or adjacent to Potunk Point, described in the complaint, for the purpose of making a solid roadway or embankment, and from substituting for the wooden bridge or structure, supported on piles, which the defendant, Nathan C. Jessup, has built across said Great South Bay at or near said Potunk Point (or for any part thereof), a solid embankment of earthen materials across, over, or through said Great South, or any part of said bay." The judgment thus enjoins two distinct acts: First, digging or disturbing the lands under the waters of the bay for the purpose of making a solid roadway or embankment; second, substituting a solid roadway of earthen materials for the present wooden bridge.

On the former appeal in this action (162 N. Y. 122, 56 N. E. 538) and in People v. Jessup, 160 N. Y. 249, 54 N. E. 682, which grew out of the same facts as those presented in the case at bar, the court of appeals announced certain propositions of law which must control our conclusions on the present appeal: (1) The town of Southampton, under the Andros and Dongan charters, was vested with title and sovereignty over the waters of Great South Bay at Potunk Point, as those waters were not navigable within the common-law rule prevailing at the time the charters were granted. People v. Jessup, supra. (2) The town had power to authorize a riparian property owner to construct and maintain over and on such waters and lands under water such a bridge as the state might have authorized had it, instead of the town, succeeded to the English sovereign's title and control over such waters, namely, a bridge which is not an unreasonable obstruction to navigation. Id. (3) The power of the sovereign, holding in trust for the people the navigable waters, to partially diminish the navigability of such waters, has long been settled. Abundant illustration of the exercise of the power may be found in the grants of lands under water in the Hudson river to the Hudson River and the West Shore Railroad Companies, by which bays or arms

larger in area and of deeper water than the one in question have been rendered inaccessible by boats of any kind from the main stream except through a drawbridge.  Id.  (4) The right created by a resolution of the town authorizing a riparian proprietor to make a roadway and erect a bridge across the bay is a franchise, as distinguished from a license or an easement, and is as effective as a grant by deed of an executive body, and is the usual form in which franchises are conferred.  Trustees v. Jessup, supra.  (5) Any reasonable and ordinary roadway, such as a solid embankment of earth, is authorized by such a resolution, as a roadway to be made over lands under water includes more than a mere right of way, and of necessity contemplates a structure resting on the land and extending above the water, and, in the absence of specifications in the grant, confers upon the grantee of the franchise the right to make it out of the materials in common use for the construction of roads, such as earth and stone. Wood is not ordinarily used for the purpose, and the right conferred was not to build a viaduct, but to make a roadway, which is generally solid from the ground up.  (6) The defendant was not to erect a bridge and roadway, but to *make* a roadway, and *erect* a bridge. (The italics are in the opinion.)  The latter had to be an elevated structure in order to pass over the channel and not obstruct navigation, while the former could be a solid bank of earth.  Id.  (7) The grantee of the franchise under such resolution waives no right by building a temporary structure in the first instance.  Id.  (8) If the plaintiffs wished to limit the defendant to a wooden structure resting on piles, which would have been more like a bridge than a roadway, they should have said so.  The resolution is silent upon the subject, for the words, "height above the meadow, three feet," refer to the bridge, and not to the roadway.  Id.  (9) The effect of a solid roadway in holding the water back after a heavy storm was not spoken of at the time of the grant, so far as appeared, and, if the plaintiffs had wished protection from such a result, they doubtless would have made provision for it in the resolution, the same as they did with reference to protecting the navigation of the channel.  They took no such precaution, and cannot now enjoin the defendant because they failed to do what they might have done.  Id.  (10) The reason of ordering a new trial may be found in the concluding words of the opinion:

"Whether he could dig upon the lands of the plaintiffs in order to get the material is open to question, and, as the matter has not been fully argued, we do not now decide it.  The evidence suggests, but does not show, that the earth and sand of the roadway may, unless confined in its place, ultimately wash away somewhat, and result in the formation of sand bars which will obstruct navigation.  We pass upon no question relating to this subject.  The complaint should not be dismissed, because the investigation upon the trial under review was not thorough enough to exhaust the facts, and a new trial may develop a different situation in some respects."  Trustees v. Jessup, supra.

The court of appeals did not specifically pass upon the question of the admissibility of evidence that the defendant wished to build a solid roadway on the south side, such as he had already built on the north side.  In the short decision the trial court found that:

"When the resolution * * * was passed, and when the same went into effect, it was the intention and understanding of the trustees of the

town and of the defendant that the structure over the entire width of the bay should be a wooden structure, supported by piles, such as the defendant, soon after the passage of the resolution, proceeded to construct. Said resolution was so construed and acted upon by the parties, and, after the bridge on piles was built by the defendant, the then trustees and the defendant inspected it at defendant's request, and all agreed that it was built according to the resolution, and as they all intended by the resolution. The acts of the defendant complained of were, therefore, without authority, and constituted a trespass."

The first question requiring consideration is the admissibility of evidence of what was said and done by the parties before and at the time of the passage of the resolution. The plaintiffs, for the purpose of showing that it was not the intention of the parties that the defendant should erect a solid roadway, but only a wooden structure on piles, through the waters of the bay, offered evidence of conversations which accompanied the making of the contract; in other words, they were attempting to vary the terms of the resolution which the court of appeals has decided to be a franchise. The right to do this must depend upon the question whether there is any ambiguity arising out of the terms employed. Corse v. Peck, 102 N. Y. 513, 7 N. E. 810. In Bast v. Bank, 101 U. S. 93, 25 L. Ed. 794, the court adopted the language of the supreme court of Pennsylvania in Barnhart v. Riddle, 29 Pa. 96, as follows:

"Where parties have deliberately put their engagements in writing, and no ambiguity arises out of the terms employed, you shall not add to, contradict, or vary the language mutually chosen as most fit to express the intention of their minds. What if parol evidence prove, never so clearly, that they used such and such words in making their bargain? The writing signed, if it contain not those words, is final and conclusive evidence that they were set aside in favor of the other expressions that are found in the written instrument. And hence this rule of law is only a conclusion of reason,—that the medium of proof is most trustworthy which is most precise, deliberate, and unchangeable."

This statement of the law by a Pennsylvania court is all the more forceful as there was at one time a tendency in that state to relax the ancient stringency of the common-law rule. In Thomas v. Scutt, 127 N. Y. 133, 27 N. E. 961, it was held that, to bring a case within the rule admitting parol evidence to complete an entire agreement of which a writing is only a part, two things are essential: First, the writing must not appear, upon inspection, to be a complete contract; second, the parol evidence must be consistent with, and not contradictory to, the written instrument. As the court of appeals has declared that the resolution was an irrevocable franchise, conferring upon the defendant the right to make a solid embankment or roadway out of materials in common use for the construction of roads, such as earth and stone, and that he waived no right by building a temporary structure, and as the resolution does appear to be complete in itself, and as there is no ambiguity in its language, it was reversible error to admit evidence of the intention of the parties to vary the effect of the resolution. This seems to me the only logical deduction from the opinions of the court of appeals in the cases cited. It follows that the exceptions to the two quoted findings were well taken.

The trial court also found that "a solid embankment of earth substituted for such wooden structure in whole, except the width of the draw (or from the draw to the south shore of the bay), would result in irreparable injury to the plaintiffs." The defendant excepted to this also. The court of appeals has found that the plaintiffs within and under their powers granted an irrevocable franchise to the defendant, and that he had the right thereunder to build a solid roadway. Consequently the matter of injury to the plaintiffs was not a defense sufficient to justify the court in revoking what the court of appeals has declared to be an irrevocable franchise. That was matter which might have affected the granting of the franchise. The plaintiffs had absolute power over the water and lands under water at the place in question, and, subject to the power of the United States, could exercise control over them. They exercised such power in making the grant authorizing the defendant to do what they might have done themselves, and it is now too late to plead irreparable injury. Consequently the admission of evidence upon that subject and the finding in question were error.

There remains, however, the question as to the effect of the final clause of the resolution, "And the said Nathan C. Jessup shall not cause any unnecessary delay to those navigating the waters of said bay." Having already declared the power of the plaintiffs to grant the franchise to erect a solid roadway, we must assume that the prohibited interference of this clause related solely to the restricted navigation of the waters of the bay as it might exist after the roadway should have been constructed. It had reference, therefore, solely to delay of such navigation by reason of an insufficient drawbridge, or its failure to operate properly. There is no finding, and no clause in the judgment, that the drawbridge interferes with such navigation.

As to the first injunctive clause of the judgment, which restrains the defendant from digging or otherwise disturbing the lands under water, it is to be said that the court of appeals declined to pass upon that question. There is nothing in the resolution which authorizes the defendant to dig his material from the land of the plaintiffs, and to that extent I think the judgment is correct, and should be affirmed.

It is also evident that under the decision of the court of appeals the second clause of the judgment, enjoining the defendant from substituting a solid roadway for the present wooden bridge, is error. That court distinctly upheld his right to do so, and I see nothing in the evidence which would support a finding to the contrary.

The judgment is entered upon a decision which does not separately state the facts found, and the defendant has filed exceptions to such decision, so that this court has power to review all questions of fact and law, and modify or affirm the judgment, or grant a new trial, or grant to either party the judgment to which he is entitled. Code Civ. Proc. § 1022. Because the court of appeals has already practically decided all the questions involved in this appeal, except as to the defendant's right to dig on the plaintiffs' lands for materials with which to construct the roadway, I think that the judgment

should be modified by striking out the clause reading, "And from substituting for the wooden bridge or structure, supported on piles, which the defendant, Nathan C. Jessup, has built across said Great South Bay at or near said Potunk Point (or for any part thereof), a solid embankment of earthen materials across, over, or through said Great South or any part of said bay," and that the judgment, as thus modified, should be affirmed, without costs of this appeal.