Frank X. Altimari, J.
The petitioner brings on this action to recover possession of real property under subdivision 7 of section 713 of the Real Property Actions and Proceedings Law. He seeks to recover an area on the southerly side of Great Neck *641 Road in the Village of Great Neck Plaza, New York. This area is currently in use as a parking lot for a shopping center which is located on the north side of Great Neck Road between Middle Neck Road and Brompton Road in the Village of Great Neck Plaza. The Grand Union Company is a tenant of the petitioner landlord in the aforesaid shopping center. The shopping center proper has a parking area while the premises sought to be recovered is identified as “ supplemental parking area ” and is across Great Neck Road from the shopping center proper.
This matter is submitted to the court on an agreed statement of facts.
The Grand Union Company is a tenant by virtue of a lease entered into between the Grand Union Company, as tenant, and Bing Realty, as landlord (the predecessor in interest to the petitioner herein), dated the 9th day of May, 1950. Executed simultaneously with that lease was a document entitled “ supplemental agreement ”. It provided that the landlord would acquire ownership of the tract of land in question to be used for “ supplemental parking ”. The disposition of the question before this court revolves around the interpretation of this “ supplemental agreement ”. The petitioner contends that the supplemental agreement is a mere license, revokable by the landlord at will. The respondent contends that the “ supplemental agreement ’ ’ is part and parcel of the lease and thereby confers on the respondent all the rights as a tenant of the premises that the petitioner seeks to recover.
The lease entered into between Bing Realty and the respondent indicated it would run for a period of 15 years from the 1st day of March, 1951, and that the tenant would be entitled to two successive extensions of this lease, each extension to be of a period of 5 years. They are currently in the first extension period of the lease. The supplemental agreement provided that it would be effective “ throughout the term of the tenant’s occupancy of the premises demised by the aforesaid lease and any renewals or extensions thereof.” Sometime later in 1960 the petitioner conceived and planned to erect an apartment house on the premises in question. In seeking financing of this venture the financiers raised a question with respect to the shopping center’s tenants’ rights in the “ supplemental parking area ”. The petitioner has been able to secure the consent of the other tenants of the shopping center but has been unsuccessful in obtaining the consent of Grand Union. Thus this action comes before the court.
The problem before us is basically one of construction of the *642 “ supplemental agreement After a review of the lease and the “ supplemental agreement ”, it is the conclusion of this court that the supplemental agreement was intended to be part and parcel of the lease. The supplemental agreement was executed on the same day and its purpose was to induce Grand Union to enter into the lease. The agreement in question more than characterizes the parties as landlord and tenant as petitioner contends. The landlord in addition to agreeing to acquire the land in question, agreed to improve the land for parking for the use of customers, including Grand Union customers. The agreement went on to state: 1 ‘ the parking area to be prepared at the same time and in exactly the same manner as the parking area lying within the shopping center proper, and subject to use under exactly the same terms and conditions, throughout the term of the tenant’s occupancy of the premises demised by the aforesaid lease and any renewals or extensions thereof, without further cost or expense to the tenant or its customers.” (Emphasis supplied.)
A further indication that it was the intent of the parties that there be a landlord-tenant relationship with respect to this additional area is evidenced by the following excerpt from the supplemental agreement: “ The landlord and tenant shall have all the rights and obligations of landlord and tenant respectively in this additional area as though the same were included in the aforesaid lease, and all the provisions of the aforesaid lease shall be applicable thereto wherever pertinent, except that the tenant shall not be obligated to pay any further rent for the use of the said additional parking area.” (Emphasis supplied.)
The significance and materiality in the over-all transaction of the ‘ ‘ supplemental parking area ’ ’ is highlighted by the following clause: 11 The premises demised by the said lease shall not be delivered to the tenant ready for occupancy until and unless the said ‘ supplemental parking area ’ is simultaneously delivered ready for occupancy.”
It is dear that the parking area mentioned in the supplemental agreement is to have the exact status as the parking area in the shopping center proper and if the petitioner has the right to recover possession of the supplemental parking area then on the same theory he would have the right to recapture the parking area in the shopping center proper.
Again turning to the supplemental agreement, the clear intention of the parties would appear to be that the landlord was not to have the right to recapture the entire “ supplemental parking area ”. This is evidenced by the specific right given to the landlord in the supplemental agreement to recapture a *643 portion of the “ supplemental parking area ” not larger than 100 by 110 for the erection of a one-story and basement store building (not the whole area for an apartment). The inclusion of an exception of this nature indicates that the parties to the agreement intended the right to the use of the supplemental parking area as a whole to remain for the duration of the lease and any renewals. This court finds that the supplemental agreement should be incorporated and read with the lease forming one single agreement. A lease should be interpreted as a whole and all writings forming a part of the same transaction are to be interpreted together. (Pangburn v. Stanley Mark Strand Corp., 24 N. Y. S. 2d 97; Matter of Miller v. 325 East 72nd St., 173 Misc. 347; Tompkins v. Hale, 172 Misc. 1071, affd. 259 App. Div. 860, affd. 284 N. Y. 675; Dunbar Apts. v. Nelson, 136 Misc. 561).
A significant case decided in Nassau County Supreme Court in 1958 by the Hon. Marcus Christ is 125 Hempstead Turnpike Gorp. v. Tracco Hempstead Inc. (14 Misc 2d 554). It also involved a shopping center and the use of the parking field and the sidewalk. The defendant owned a large shopping center in West Hempstead. The plaintiff and the defendant, S. Klein Department Stores, were both tenants of the defendant, Tracco, under separate leases. The lease to both tenants indicated that the landlord would provide parking space substantially as indicated on a schedule attached to be used in common by the tenants and the tenants’ patrons. The tenant was not obligated to pay any cost of maintaining and managing the parking space. S. Klein parked a large trailer truck in the parking lot, set up a cash register and sold garden supplies from the truck. The court there saw fit to issue an injunction against the defendant restraining the utilization of the parking field for merchandising from a truck or van, thus concluding that the plaintiffs had substantial rights in the parking area although they did not have exclusive control of the area.
Even if we should accept, and the court does not, the petitioner’s contention that the supplemental agreement is merely a license it wonld still not entitle the petitioner to the recovery of the property at this particular point. The defendant is not correct in his position that the license, if it be a license, is revokable at will. A license is an incorporeal hereditament and may be oral or written and may be with or without consideration. It also may be revokable at will or may be for definite period of time. (2 Harvey, Law of Real Property, § 301.07.)
In the case at bar, if it was a license it was in writing and was for a definite period of time which has not yet expired *644 and the consideration was adequately recited, to wit: “ in order to induce Grand Union Company, as tenant, to enter into a lease with Bing Realty Incorporated, as landlord Even had no consideration been given for this “ license ” it may still be enforceable since there is significant persuasive authority indicating that a license could not be revoked after the licensee had made improvements and invested capital in consequence of it. A license cannot be revoked in violations of its terms after the licensee has seriously changed his position on the faith of it. (Rerick v. Kern, 14 S. & R. [Pa.] 267, note: Promissory Estoppel Applied by the Pennsylvania Courts, 19 Temple L. Q. 46; Wynn v. Garland, 19 Ark. 23; Miller & Lux v. Kern County Land Co., 154 Cal. 785 ; Albrecht v. Drake Lbr. Corp., 67 Fla. 310; Girard v. Lehigh Stone Co., 280 111. 479.)
Other cases indicating that a license may be for a definite period and is not necessarily revokable at will unless the term of the license has expired are as follows: Lordi v. County of Nassau (20 A D 2d 658, affd. 14 N Y 2d 699). The Appellate Division there held that the term of a license had run, the licensee had no right as a holdover tenant and the license could be revoked at will. The implications were that the license was valid during its term and revokable at will thereafter. The plaintiff in that case had a license for one year but continued without any express renewal for a period of two additional years after which time he received notification that his golf operation at Salisbury Park was terminated. (See, also, Columbus Cosmetic Corp. v. Shoppers Fair of South Bend, 26 A D 2d 391.)
The petition is dismissed.