OPINION OF THE COURT
Donald J. Corbett, Jr., J.
This claim seeks damages from the defendant State of New York for breach of express and/or implied contract.
Claimant is an advertising company that obtains agreements with well-known companies for the visual display and advertisement of their various products. These advertisements are displayed throughout the United States on the top of ski-lift towers located at numerous ski resorts. The claimant contracts with various advertisers to provide a number of tower displays of their products for a seasonable rental per tower. Claimant also contracts with the various ski resorts for the right or privilege to erect and display advertisements upon the ski towers of each resort.
The claimant alleges herein that the State of New York has breached an agreement permitting the erection and display of advertisements at two ski resorts it owns and operates.
The facts are little in dispute but warrant brief recitation. The purported express contract is entitled a "Revocable Per *107 mit”, between the claimant Ski-View, Inc. (designated therein as permittee) and the Department of Environmental Conservation (DEC) which owns and operates the Gore Mountain Ski Center. ECL 9-0305 purportedly provides statutory authority for the DEC to grant such permit.
This Revocable Permit, dated November 10, 1982, authorized the claimant to install and maintain some 75 signs upon the towers of the ski lifts at Gore Mountain. While the sign brackets were installed at Gore prior to the date of the granting of the permit, the signs were installed subsequent thereto consistent with the permit for the 1982-1983 ski season.* Each ski season runs from December 1 through April 30 of the succeeding year.
Thereafter, the claimant was notified by the State, in a letter dated March 7, 1983, that the program at Gore Mountain had been well received and apparently had been successful. As noted therein, the State considered the Gore Mountain agreement to encompass a "pilot” program, inter alia, to see what the public reaction would be to such advertising. As of that date the parties were harmonious and without dispute.
Claimant desired to expand its program to include Belleayre Mountain, another ski resort operated by the State of New York, and entered into negotiations to secure a permit for the erection and display of advertising signs thereat. On May 29, 1983, the Superintendent of Belleayre Mountain notified claimant in writing that it was "looking forward to working as members of the 83-84 Ski-View Network”. Although no formal written and signed agreement was executed with the State, but in reliance upon the enthusiasm of the Belleayre Mountain Superintendent and oral communications with personnel employed by the defendant, claimant proceeded to install brackets on various towers at Belleayre Mountain. During the early spring of 1983, agents of the defendant articulated their concern about the legality of such a program. By June 30, 1983 the existing advertising signs, but not the brackets, were removed from the towers at Gore Mountain pursuant to the State’s request.
During the late spring and early summer of 1983, after various discussions with the State of New York, the claimant *108 obtained a legal opinion concerning the legality of the State’s permission for such advertising on public property. It was during this period, and upon the appointment of a new Commissioner of the Department of Environmental Conservation, that the State similarly conducted its independent review of the legality of such permit. Ultimately, after'providing oral notification on December 16, 1983, the State confirmed by written notice dated December 20, 1983 that the Revocable Permit dated November 10, 1983 (sic) covering safety signing at Gore was revoked.
Claimant commences this claim alleging breach of express contract for the Gore Mountain permit and breach of an implied contract for the Belleayre Mountain sign brackets. Each claim seeks money damages for the labor costs for the various installations of brackets, signs and miscellaneous hardware; the cost of such raw materials and their fabrication and modification; transportation expenses, and other sales expenses, all of which were allegedly incurred by the claimant solely as the result of the claimed breaches by the State.
While claimant concedes the general rule that licenses, much like wills, are revocable by the licensor, even though consideration may have been paid for the license and even though money may have been expended in reliance thereupon, it seeks damages here upon the theory that a license for a "definite term”, if breached, creates a cause of action for such breach. (Nemmer Furniture Co. v Select Furniture Co., 25 Misc 2d 895; Melodies, Inc. v Mirabile, 4 Misc 2d 1062, mod on other grounds 7 AD2d 783; Schusterman v C & F Caterers, 192 Misc 564, 567-568; and see, 17 NY Jur, Easements and Licenses, §§ 213, 215.)
Claimant’s protestations to the contrary, a plain and clear reading of the Revocable Permit provides no support for a theory that it was a license for a "definite term” (cf. Lordi v County of Nassau, 20 AD2d 658, affd 14 NY2d 699). ECL 9-0105 (15) allows issuance of permits for temporary use of the forest preserve of the State. The pivotal paragraph of this permit reads: "1. The department hereby grants the permitee a temporary revocable permit for a period of five years for the use of the ski center for the program described in appendix 'a’ attached hereto and hereby made a part hereof.” (Emphasis added.) Paragraph 3 thereof notes that the permit "shall automatically expire five years from that date [of signing] unless otherwise renewed.” Thus, if the parties did nothing by the end of five years, the permit would automatically extin *109 guish. That being the case, a "temporary revocable permit for a period of five years” can suffer no interpretation other than the obvious, that the State reserved the right to revoke the permit at any time during the five-year period. Were the court to adopt claimant’s suggested interpretation it would perforce be ignoring the plain and obvious meaning of the words "temporary” and "revocable” (see, Nemmer Furniture Co. v Select Furniture Co., supra, at p 898). Claimant’s arguments for such an improbable view of the permit, while most articulate, are not persuasive. Inasmuch as the written permit relating to Gore Mountain does not support claimant’s arguments regarding a definite term, the implied permit or license for Belleayre Mountain, which was never written, manifestly fails to buttress the argument. (Murdock v Prospect Park & Coney Is. R. R. Co., 73 NY 579, 584.)
It cannot be gainsaid that claimant, prior to the expenditure of money at Belleayre Mountain, was aware of the State’s hesitancy to issue a second permit. Notwithstanding the apparently gracious note from the director at Belleayre, later communications from the State and claimant’s subsequent presentation of formal legal opinion from private counsel unequivocally establish that claimant was on notice that an additional permit for Belleayre, or for that matter the continuation of the Gore permit, were not necessarily assured.
Of course, the State, through its employees at Belleayre, permitted erection of the sign brackets although no permit had been issued, and the existing Gore permit was not revoked until December 16, 1983, after commencement of the ski season. Whatever the inequities of the State’s apparently abrupt and terse revocation, and with cognizance of the fact that the brackets at Gore Mountain had also been erected prior to the granting of that permit, claimant opted to erect the brackets at Belleayre without the benefit of a written permit. Claimant made a calculated business decision. The State should not be held liable in damages for breach of an implied contract resulting solely from the claimant’s precipitous actions.
Although claimant was unable to persuade the court that these licenses were for a definite term, thus qualifying under the limited grounds upon which the courts of this State have permitted recovery for damages for revocation of a license, claimant urges adoption of the rule accepted in Pennsylvania that, where enjoyment of a license is necessarily accompanied by an expenditure of money, the license becomes an irrevoca *110 ble agreement (Harris v Brown, 202 Pa 16, 51 A 586). The Pennsylvania view, articulately reported in Promissory Estoppel as Applied by the Pennsylvania Courts (19 Temple L Q 46; Restatement [Second] of Contracts § 90) has rarely been acknowledged in this State (e.g., Murdock v Prospect Park & Coney Is. R. R. Co., supra; Crosdale v Lanigan, 129 NY 604, 610-611; but see, North Shore Mart v Grand Union Co., 58 Misc 2d 640, 644), nor has it gained broad acceptance (but see, White v Manhattan Ry. Co., 139 NY 19, 25; and see generally, 3 Warren’s Weed, New York Real Property, License § 1.07 [4th ed]). The courts in New York have found licenses irrevocable in the area of charitable subscriptions (Allegheny Coll. v National Chautauqua County Bank, 246 NY 369; and see, Woodmere Academy v Steinberg, 41 NY2d 746), or where the license is coupled with an interest (see, Prosser v Gouveia, 98 AD2d 992; 17 NY Jur, Easements and Licenses, § 215, at 514-515), or through the expenditure of money by the licensee (Saratoga State Waters Corp. v Pratt, 227 NY 429, 442, 447, although the court therein suggests the proper remedy was an action in equity for injunctive relief, an authority beyond the jurisdiction of this court).
Where advertisements were initially permitted on a temporary fence surrounding the New York City Public Library, on the basis of an agreement executed by the New York City Commissioner of Parks in consideration of an annual rent, the court held that it was a mere license revocable at pleasure, noting that the Commissioner therein was clearly right in his efforts to prevent the use of public property for the purpose of advertising (McNamara v Willcox, 73 App Div 451, 453).
Perhaps the New York rule is best summarized by noting that a license is revocable at will unless the conduct of the licensor makes it inequitable to permit him to revoke (see, 1A Thompson, Real Property § 225, at 235, 239-240 [1980 replacement]). In the case at bar, while claimant undoubtedly expended sums of money at Belleayre Mountain, it certainly could not have done so in reliance upon a license which was never granted, even though the State did not prevent them from constructing the sign brackets thereon. The evidence at trial discloses that the State consistently harbored doubts as to the propriety, if not the legality, of such commercial utilization of public property.
It cannot be said that the State engaged in conduct which would transform this temporary revocable permit into an irrevocable license. The court is not inclined to hold the State *111 liable in damages for breach of express contract or breach of an implied contract upon the theory of promissory estoppel, particularly where the court believes that claimant took a calculated business risk and now seeks to be recompensed for its miscalculation.
Accordingly, the claim herein is dismissed.

 These signs contained advertisements for various companies noted above and recited ski safety slogans purportedly in furtherance of the legislative intent to promote safety in the ski industry (see, 12 NYCRR part 54).