# State of New York Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 98  SSM 6
Skaneateles Country Club,
     Appellant,
      v.
Olivia Cambs,
     Respondent.

Submitted by Brian J. Buttler, for appellant.
Submitted by Peter J. Cambs, for respondent.

MEMORANDUM:

The order and judgment of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court reinstated.

- 1 -

In 1999, plaintiff Skaneateles Country Club (SCC) undertook a project to construct 80 boat slips on Skaneateles Lake for the benefit of club members. Interested members, including defendant Olivia Cambs, were required to contribute an initial capitalization payment and enter into an Assignment Agreement. Through the Assignment Agreement, SCC "assign[ed] and transfer[red]" to defendant the "use and occupancy right with respect to one boat slip," subject to certain express conditions. SCC reserved the right to determine the specific boat slip defendant would occupy, and defendant agreed to comply with all of SCC's rules and policies, pay an annual maintenance fee, and adhere to any applicable laws, ordinances or governmental regulations. The agreement also permitted defendant to make a "Legacy Transfer" of the slip to her offspring if certain specified conditions were met. Further, the agreement provided that, "[i]n the event [defendant] elect[ed] to terminate this Assignment Agreement" or was no longer a club member, SCC would return the initial capitalization payment.

Following an unrelated dispute with defendant, SCC commenced this declaratory judgment action, seeking a declaration that the agreement was a license terminable at will by SCC. Defendant answered and counterclaimed seeking a declaratory judgment "that the Agreement is not terminable at will by SCC." Supreme Court granted SCC's motion for summary judgment and declared in its favor.

The Appellate Division reversed and declared that "the agreement is a license not terminable at [SCC's] will" (211 AD3d 1459, 1462 [4th Dept 2022]). Two Justices dissented, agreeing that the instrument was a license, but finding no basis for applying an exception to the general rule that a license is terminable at will by the licensor.

Before this Court, the parties do not dispute that the subject agreement is a license—only whether SCC had the ability to revoke it. "A license . . . is a revocable privilege given 'to one, without interest in the lands of another, to do one or more acts of a temporary nature upon such lands'" (*Union Sq. Park Community Coalition, Inc. v New York City Dept. of Parks & Recreation*, 22 NY3d 648, 656 [2014], quoting *Trustees of Town of Southampton v Jessup*, 162 NY 122, 126 [1900]). Contrary to defendant's contention, nothing in the parties' agreement limits SCC's right to terminate or otherwise evinces an intent to alter the general rule that licenses are revocable at will by the licensor (*see Willow Tex v Dimacopoulos*, 68 NY2d 963, 965 [1986]; *see also Union Sq. Park Community Coalition, Inc.*, 22 NY3d at 656-657). Although licenses may become irrevocable by the licensor in certain circumstances (*see e.g. Sarfaty v Evangelist*, 142 AD2d 995, 996 [4th Dept 1988]; *Prosser v Gouveia*, 98 AD2d 992, 993 [4th Dept 1983]), we are not satisfied that any such circumstances are presented here.

RIVERA, J. (dissenting):

The parties' Assignment Agreement controls and, based on that Agreement, plaintiff Skaneateles Country Club ("SCC") did not issue defendant Olivia Cambs a license revocable at will by SCC for a boat slip she has used for over twenty years. Instead, SCC granted Cambs an exclusive right of use and occupancy for the duration of her membership, and the right to transfer the boat slip at any time, in accordance with the Agreement's terms. The word license does not appear in the parties' Agreement, and at-will revocability by SCC is contrary to the purpose and structure of the Agreement. But putting that aside, even if this were a license, SCC could not revoke at will. The majority concludes that SCC can terminate Cambs' right of use on the flawed premise that a license may never be rendered irrevocable. The law recognizes that a license may be rendered irrevocable by the parties'

- 1 -

choice and conduct. The parties made that choice here and Cambs acted in reliance thereof. Therefore, I would affirm the Appellate Division's grant of summary judgment to Cambs, but on slightly different reasoning.

I.

The Parties' Boat Slip Assignment Agreement

SCC is a lakeside private golf, sailing and vacation club in New York's Finger Lake region, open seasonally to paying members and guests. To help fund its Breakwater and Boat Slip Project and the construction of 80 boat slips on Skaneateles Lake, SCC entered individual agreements with members interested in purchasing rights of use to one of the new boat slips.

Cambs was one of the original eighty members to enter an "Assignment Agreement" with SCC at a $5,000 purchase price consisting of her initial capitalization payment and binder, and a promise to pay future annual maintenance fees.[1] The parties' Agreement reads, in relevant part, as follows:

1. The Assignor [SCC], through its Board of Directors (or its authorized designee) (hereinafter, the "Board), reserves the right to determine the specific boat slip location to be occupied by Assignee [Cambs] within the Breakwater and Boat Slip Project.
2. The Assignee agrees to adhere to all the Rules and Policies of the Assignor at all times.
3. The Assignee agrees to pay an annual maintenance fee which is initially set at $100.00, and the Board reserves the right to increase maintenance fee as required, however, such increase not to exceed 10% per year.

---

[1] Cambs is one of the 23 remaining original boat slip assignees.

4. The Assignee agrees to abide by any law, ordinance, or governmental regulation including environmental regulations restricting or regulating the use or enjoyment of the Breakwater and Boat Slip Project.

5. The Assignee agrees to hold the Assignor harmless for any and all claims for property damage or bodily injury arising in whole or in part from the acts or omissions of the Assignor, its employees and agents, excepting only claims arising from the gross negligence of the Assignor or its employees or agents. The Assignee further waives the right of the subrogation of any third party.

6. In the event the Assignee elects to terminate this Assignment Agreement or is no longer a member of the Assignor, the Assignor agrees to return to Assignee the Initial Capitalization Payment (as described in the Boat Slip Payment Agreement dates of today's date) less any monies owed Assignor by Assignee. This return of funds will occur only after the Assignor transfers the slip rights to another Assignee, which transfer shall not be unduly delayed.

7. The slip can be transferred by the Assignee to their offspring, provided such offspring is at the time of the transfer, a member in good standing of the Assignor. This is called a Legacy Transfer. In order to effect a Legacy Transfer, (i) all obligations of the original Assignee to the Assignor must be paid in full, (ii) any balance remaining on the Assignee's Boat Slip Payment Agreement must be paid in full, unless such amount is being assumed by the recipient of the Legacy Transfer, and (iii) a new Assignment Agreement must be executed by the Assignor and the recipient of the Legacy Transfer.[2]

---

[2] Cambs' Agreement comports with SCC's representations regarding the member's rights to occupy and use of the boat slip. According to the "Floating Breakwater and Boat Slips Project Description", a "member will have the right to use [their] specific slip until they are no longer a member, default on payment, transfer their slip rights or lose club privileges." SCC's Harbor Rules portion of the website, describes the assignment as a "Right to Occupy", which, "for a fee that would be returned at a portion determined by contract and an annual maintenance fee that is determined by the Board, an assigned slip was theirs to use."

The description sets out the steps a member should take to transfer their assigned slip and specified that "the former slip member will be responsible for all payments until a rights transfer can be made." The Project Description's "Frequently Asked Questions" state that a member will retain the same slip each year "until either an expansion occurs or application is made to the Slip Assignment Committee for reassignment."

In sum, under the terms of the Agreement, absent a unilateral at-will termination by Cambs or her voluntary transfer of the assignment, Cambs retained exclusive use of her designated boat slip for the entirety of her membership. There is no mention of a right of termination at will by SCC.

For over two decades, Cambs had exclusive use and enjoyment of the boat slip SCC assigned to her pursuant to their Agreement. During that period, Cambs bought and insured a boat and later purchased a replacement when the first boat was destroyed by fire. She kept both boats at her designated boat slip. The Agreement was in full force until SCC sought to terminate Cambs' right of use after Cambs demanded reimbursement for alleged maintenance fee overpayments.

## II.

SCC Seeks to End Cambs' Rights of Use and Occupancy Under the Agreement

After Cambs learned that another member successfully sued SCC for excessive maintenance fees,[3] Cambs called the SCC Board President and Director to request a refund on the same basis. According to Cambs, they informed her that SCC would not be issuing any refunds and her repeated requests would result in SCC terminating her boat slip. Cambs hoped not to litigate the matter, as she had belonged to the club for 25 years and there were only two marinas on the lake, neither of which had any open slips at the time. However,

---

[3] In the other member's action, County Court determined that SCC had overcharged members in 2014, 2017, and 2018.

when SCC refused her requests for reimbursement, Cambs filed a small claims action in Town Court and thereafter SCC paid Cambs the full amount she demanded.

While that matter was pending, SCC filed a complaint in the instant matter against Cambs in Supreme Court, seeking declaratory relief that the slip agreement was terminable at will by SCC. In response, Cambs asserted two counterclaims, the first for declaratory relief that the agreement was not terminable at will by SCC, and the second seeking a permanent injunction requiring SCC to provide her access to the boat slip.

Supreme Court granted SCC summary judgment, concluding that the Agreement constituted a revocable license. In a 3-2 decision, the Appellate Division reversed and granted summary judgment in favor of Cambs, concluding that, while a license is generally revocable, "the very structure of the agreement establishes that the license is not terminable at will by" SCC (211 AD3d 1459, 1461 [4th Dept 2022]). The dissenting Justices would have affirmed based on their view that, regardless of the agreed upon terms, a license is revocable by the grantor (*id*. at 1463).  SCC appeals as of right pursuant to CPLR 5601(a).


III.

The Agreement Does Not Grant SCC the Right to Terminate at Will

SCC argues that the Agreement is a license that it may terminate at will, that SCC is not limited to terminating only when Cambs fails to comply with specific terms in the Agreement, and that SCC did not need to include an express right of termination in the parties' writing. SCC also argues that its contractual obligation to return the initial

capitalization payment upon Cambs' termination of the assignment or her club membership has no bearing on whether it may revoke the Agreement at will.

In response, Cambs argues that the Agreement is the best evidence of the parties' intent and its terms are clear and unambiguous that the assignment is terminable only in accordance with the Agreement's express conditions. Cambs further claims that interpreting the Agreement to include a right for SCC to terminate at will would render the enumerated reasons for termination superfluous. According to Cambs, parties to a license, lease, or any other form of contract are bound by the particular contractual language, which here does not include a right for SCC to terminate at will. Cambs also asserts that her financial investment in the construction of the boat slip, her purchase of a boat in reliance on the Agreement, and the inequitable conduct of SCC in seeking to terminate when she sought a refund, further support a holding that, on the facts of this case, SCC may not terminate at will.

Cambs is correct that the parties' Agreement controls and that, under the terms of the assignment, SCC has no right to terminate at will.

## A.

Absent a violation of law or public policy, "the parties to a contract are basically free to make whatever agreement they wish" (*Rowe v Great Atl. & Pac. Tea Co.*, 46 NY2d 62, 67-68 [1978]). Thus, "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms" (*Nomura Home Equity Loan, Inc. v Nomura Credit & Capital, Inc.*, 30 NY3d 572, 581 [2017]). To that

end, "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (*U.S. Bank N.A. v DLJ Mtge. Capital, Inc.*, 38 NY3d 169, 178 [2022] [cleaned up]).

The Agreement is titled an "Assignment Agreement." It refers throughout to SCC as the Assignor and Cambs as the Assignee. It expressly transfers to Cambs as Assignee exclusive "use and occupancy rights of one boat slip within the . . . Project installed by the Assignor" upon "the terms and conditions" set forth in the Agreement. The parties' separate "Boat Slip Payment Agreement" which details the payment terms for the "cost of the right to use the boat slip," similarly refers to the parties' "boat slip assignment agreement ('the Assignment Agreement') . . . pursuant to which the Assignor has granted to the Assignee the right to use and occupy a boat slip owned by the Assignor." Provision 6 of the Agreement expressly states that, "[i]n the event the Assignee elects to terminate this Assignment Agreement or is no longer a member of the Assignor, the Assignor agrees to return to Assignee the Initial Capitalization Payment . . . less any monies owed Assignor by Assignee." There is no corresponding express right of SCC to terminate the Agreement and we may not add what the parties chose to exclude (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 472 (2004) ["[O]ur longstanding contract interpretation principles prohibit us from adding a missing term"]). The parties and this Court are limited by the four corners of the Agreement.

Nor may we imply an at will right where doing so would be contrary to the agreement as written (*id.* at 475). Here, the Agreement granted Cambs an assignment in

exchange for capitalization funding and annual maintenance fees. The Assignment Agreement imposes various obligations on Cambs: membership in good standing; adherence to SCC's rules and policies; compliance with all applicable laws, ordinances and governmental regulations "restricting or regulating the use or enjoyment of the Breakwater and Boat Slip Project[;]" and making annual maintenance payments. Apart from the exclusive right of use, the Agreement also provides Cambs with a right to transfer her assigned boat slip to her offspring if they are an SCC member in good standing. Thus, in clear and unambiguous language, the Agreement grants an exclusive right of use and occupancy of a designated boat slip to Cambs and freely allows Cambs to terminate or transfer the assignment of the boat slip she paid for and helped finance. Indeed, this Agreement—like the agreements of the other 79 members who purchased an assigned boat slip—was central to SCC's capitalization plan for the Breakwater and Boat Slip Project. As the majority in the Appellate Division explained, recognition of an at-will right of termination in favor of SCC would undermine the Agreement's structure (211 AD3d 1459, 1461 [4th Dept 2022] ["(T)he very structure of the agreement establishes that the license is not terminable at will by plaintiff"]). At-will termination would also be at odds with SCC's lakeside development. Logically, the Agreement can only have been understood by the parties as prohibiting SCC's revocation at will.[4]

---

[4] SCC does not argue a legal or factual basis for an implied "for cause" ground to terminate the Agreement, such as an allegation that Cambs defaulted, made an unauthorized transfer of her boat slip, or allowed her membership to lapse.

B.

The majority erroneously concludes that the Agreement is a license notwithstanding the Agreement's terms and conditions. As a threshold matter, contrary to the majority's suggestion, Cambs has maintained throughout this litigation that the terms of the Agreement control, regardless of whether it is labeled a license. Cambs has never taken the position that the Agreement granted her a license revocable without cause by SCC, or that a license cannot be rendered irrevocable by its terms or the grant's actions. To the contrary, on this score Cambs argues that a license is not revocable when its contractual terms limit revocation as they do here, and that, in any case, SCC's actions have rendered the license irrevocable.

By its terms, the Agreement did not create a license. The majority sows confusion into our contract and property jurisprudence by concluding that this is a license because the parties accept it as such in litigation.

"A license is a personal, revocable, and nonassignable privilege, given by writing or parol to one, without interest in the lands of another, to do one or more acts of a temporary nature upon such lands" (*Trustees of Freeholders & Commonalty of Town of Southampton v Jessup*, 162 NY 122, 126 [1900]). "License" is a term of art that this Court has defined (*see id.*). Whether an agreement is a license depends on the written agreement of the parties and the "the rights and obligations set forth therein" (*Union Square Park Community Coalition Inc. v New York City Dept. of Parks & Recreation*, 22 NY3d 648, 656 [2014]). If those rights and obligations make clear that the assignor may not revoke

the assignee's use of the property at will, then the agreement does not create an at will revocable license in the assignor.

However, licenses may be irrevocable under certain circumstances, including when the licensor acts inequitably or in bad faith, when the license is coupled with an interest, or when the license is made irrevocable by contract (*Ski-View, Inc. v State*, 492 NYS2d 866, 870 [Ct Cl 1985] [observing that "a license is revocable at will unless the conduct of the licensor makes it inequitable to permit him to revoke"]; *In re Yachthaven Rest., Inc.*, 103 BR 68, 73 [Bankr ED NY 1989] ["The common law rule is that a license in real property is revocable at the will of the licensor unless it is coupled with an interest or made irrevocable by the terms of the contract"]). Also, a financial investment in a license may render it irrevocable (*see Saratoga State Waters Corp. v Pratt*, 227 NY 429, 442 [1920] [a license agreement between commissioners of the State Reservation at Saratoga Springs with the Saratoga State Waters Corporation to enter the land to bottle and sell water could become irrevocable via the expenditure of money by the licensee]).

Even a writing defining an agreement as a license is not dispositive if the agreement's terms do not accurately fit the definition of a license (*id.* at 802). But of course, the parties did not label the Agreement a license. SCC—the drafter—designated it as an "assignment" and referred to itself and Cambs as Assignor and Assignee, respectively, in both the Agreement and the separate, SCC-drafted Boat Slip Payment Agreement.

The majority's reliance on the parties' references to this Agreement as a license during litigation is misplaced. Simply calling it such does not make it so, either in form or substance. Regardless of the labels used by the parties, "it is the responsibility of the court

to interpret written instruments," and the majority has disregarded that responsibility here (*Mallad Const. Corp. v County Fed. Sav. & Loan Ass'n*, 32 NY2d 285, 291 [1973]). Indeed, we would not hesitate to reject a litigant's designation of an interest as a fee simple absolute if the written agreement prohibits the grantee's transfer of the property. Why? Because a fee simple absolute is freely alienable—that is the defining characteristic of this estate (56 NY Jur 2d Estates, Powers, Etc. § 5). Put simply, a court decides the nature of the parties' rights based on the substance of the interest granted by the Agreement, not the label conveniently adopted in litigation.[5] The majority thus has it backwards; if the Agreement does not create a license it cannot be a license, no matter what the parties now say. Turning to the substance of the Agreement, it provides Cambs—not SCC—with an express right to terminate at will as well as a right to transfer her boat slip. These are not characteristics of a license, which is a "nonassignable privilege" subject to the *licensor's* revocation (49 NY Jur 2d Easements § 211 ["A license grants the licensee a revocable nonassignable privilege to do one or more acts upon the land of the licensor, without granting possession of any interest in the land. As a general proposition, a license is personal to the licensee, is not assignable by the licensee, and is revocable by the licensor"]).

Even assuming, arguendo, that the Agreement is a license, it does not provide for SCC's at-will termination of Cambs' use and occupancy of the boat slip. Several of the circumstances that render a license irrevocable are present here. SCC does not dispute that

---

[5] Although the parties' identification of a property interest or right of use as falling within a particular class of interests may inform a court's analysis, here, the Agreement refers to an assignment, and makes no mention of an intent to grant Cambs a license revocable at the pleasure of SCC.

it terminated the license solely in response to Cambs' exercise of what she deemed her

right to reimbursements based on County Court's decision in another member's action

against SCC.[6] Rather than resolve their dispute in Cambs' small claims action, SCC sought

to end Cambs' use of the boat slip. After more than two decades of Cambs' compliance

with the Agreement terms, this can hardly be deemed a good faith response by SCC (*Ski-*

*View*, 492 NYS2d at 870 [inequitable conduct by licensor can make a license irrevocable]).

If that were not sufficient grounds, Cambs invested financially in reliance on the continued,

uninterrupted use of the boat slip under an Agreement that she alone could terminate at

will. She would not have invested significant capitalization funds if SCC could simply

terminate her right of use and occupancy for no reason, without any provision that SCC

return those funds.[7] She would not have bought and insured a boat if she could be denied

access and enjoyment to the slip at the whim of SCC. Certainly, the requirement of an

annual maintenance fee would make it difficult for Cambs—and the other assignee

members—to consider the right of use and occupancy terminable at any moment without

cause.[8]

---

[6] According to Cambs, in over 20 years, SCC had never terminated at will another boat slip agreement.

[7] Cambs' $4,500 capitalization payment would be worth almost $8,000 in today's dollars—a significant amount then and now.

[8] Indeed, two of the cases cited by the majority confirm that a license becomes irrevocable where, as here, an agreement was founded on consideration (*Sarfaty v Evangelist*, 142 AD2d 995, 995 [1988] [a license was revocable where the record lacked "proof of consideration for an agreement between the parties to support (a) claim of an irrevocable license"]; *Prosser v Gouveia*, 98 AD2d 992, 993 [1983] ["An irrevocable license coupled

IV.

SCC wanted to expand its boat slips. It partially funded the project by granting assignments of the right to use and occupy designated lake-side boat slips to its members at a hefty purchase price and for an annual maintenance fee. Eighty members bought in, including Cambs. SCC's Assignment Agreement with Cambs granted her the exclusive use of a specific boat slip, the right to terminate the assignment whenever she chose, and a right to transfer the boat slip to her children so long as they were club members in good standing. Cambs enjoyed the same boat slip for years. SCC now wants to terminate her right of use, not because Cambs failed to comply with the terms of the Agreement or because she wants to transfer her boat slip, but because she thinks she overpaid maintenance fees and asked for a reimbursement. Regardless of what name we give to the parties' arrangement, the Agreement, by its terms and the applicable law, does not allow SCC to terminate at will under these circumstances. I dissent.

On review of submissions pursuant to section 500.11 of the Rules, order and judgment reversed, with costs, and judgment of Supreme Court, Onondaga County, reinstated, in a memorandum. Judges Garcia, Singas, Cannataro, Troutman and Halligan concur. Judge Rivera dissents and votes to affirm in an opinion, in which Chief Judge Wilson concurs.

Decided October 24, 2023

---

with an interest may be found where there is an agreement founded on consideration and the licensee altered (their) position in reliance" on it]).