[8 NE3d 797, 985 NYS2d 422]

Union Square Park Community Coalition, Inc., et al., Appellants, v New York City Department of Parks and Recreation et al., Respondents.

Argued January 14, 2014; decided February 20, 2014

## POINTS OF COUNSEL

*Quinn Emanuel Urquhart & Sullivan, LLP*, New York City (*Sanford I. Weisburst* and *Yelena Konanova* of counsel), *Super Law Group, LLC* (*Reed W. Super* and *Alexander I. Hankovszky* of counsel), and *Albert K. Butzel Law Offices* (*Albert K. Butzel* of counsel), for appellants. I. Courts must apply the public trust doctrine de novo, without deference to the city. (*Friends of Van Cortlandt Park v City of New York*, 95 NY2d 623; *Williams v Gallatin*, 229 NY 248; *Miller v City of New York*, 15 NY2d 34; *Williams v Hylan*, 126 Misc 807; *Matter of Torsoe Bros. Constr. Corp. v Board of Trustees of Inc. Vil. of Monroe*, 49 AD2d 461; *New York Tel. Co. v City of Amsterdam*, 200 AD2d 315; *Albany*

*Area Bldrs. Assn. v Town of Guilderland*, 141 AD2d 293; *795 Fifth Ave. Corp. v City of New York*, 15 NY2d 221.) II. The proposed restaurant is not a park use. (*Friends of Van Cortlandt Park v City of New York*, 95 NY2d 623; *Williams v Gallatin*, 229 NY 248; *795 Fifth Ave. Corp. v City of New York*, 13 AD2d 733; *Blank v Browne*, 217 App Div 624; *795 Fifth Ave. Corp. v City of New York*, 40 Misc 2d 183, 20 AD2d 850, 15 NY2d 221; *Williams v Hylan*, 126 Misc 807; *Gushee v City of New York*, 42 App Div 37; *Port Chester Yacht Club v Village of Port Chester*, 123 AD2d 852; *Incorporated Vil. of Lloyd Harbor v Town of Huntington*, 4 NY2d 182; *Aldrich v City of New York*, 208 Misc 930.) III. The agreement between the City of New York and Chef Driven Market, LLC is a lease rather than a license. (*Miller v City of New York*, 15 NY2d 34; *Williams v Hylan*, 126 Misc 807; *Garza v 508 W. 112th St., Inc.*, 22 Misc 3d 920, 71 AD3d 567; *Nextel of N.Y. v Time Mgt. Corp.*, 297 AD2d 282; *Gushee v City of New York*, 42 App Div 37; *Williams v Gallatin*, 229 NY 248; *Kirke La Shelle Co. v Armstrong Co.*, 263 NY 79; *Layton v A. I. Namm & Sons, Inc.*, 275 App Div 246; *Pocher v Hall*, 50 Misc 639; *Slutzky v Cuomo*, 114 AD2d 116.)

*Michael A. Cardozo, Corporation Counsel*, New York City (*Deborah A. Brenner, Leonard Koerner* and *Amy McCamphill* of counsel), for respondents. I. As a matter of law, the Appellate Division correctly found that the restaurant is an acceptable park use. (*Friends of Van Cortlandt Park v City of New York*, 95 NY2d 623; *Gushee v City of New York*, 42 App Div 37; *Williams v Gallatin*, 229 NY 248; *Port Chester Yacht Club v Village of Port Chester*, 123 AD2d 852; *Capruso v Village of Kings Point*, 34 Misc 3d 1240[A], 2009 NY Slip Op 52829[U]; *795 Fifth Ave. Corp. v City of New York*, 40 Misc 2d 183, 20 AD2d 850, 15 NY2d 221; *795 Fifth Ave. Corp. v City of New York*, 15 AD2d 457, 11 NY2d 918; *Blank v Browne*, 217 App Div 624; *Williams v Hylan*, 223 App Div 48.) II. The restaurant concession agreement constitutes a revocable license, not a lease. (*John B. Stetson Co. v Joh. A. Benckiser GmbH*, 81 AD3d 559; *Taussig v Clipper Group, L.P.*, 13 AD3d 166; *Miller v City of New York*, 15 NY2d 34; *Matter of Terrell v Moses*, 4 AD2d 171; *Williams v Hylan*, 223 App Div 48; *Feder v Caliguira*, 8 NY2d 400; *Slutzky v Cuomo*, 114 AD2d 116; *Trustees of Town of Southampton v Jessup*, 162 NY 122; *Lordi v County of Nassau*, 20 AD2d 658, 14 NY2d 699; *Layton v A. I. Namm & Sons, Inc.*, 275 App Div 246, 302 NY 720.)

*Shapiro, Arato & Isserles LLP*, New York City (*Marc E. Isserles* and *Chetan A. Patil* of counsel), for Liz Krueger and others, amici curiae. I. The State Legislature must be involved in

any decision to alienate the pavilion. (*Friends of Van Cortlandt Park v City of New York*, 95 NY2d 623; *Williams v Gallatin*, 229 NY 248; *Potter v Collis*, 156 NY 16; *Gewirtz v City of Long Beach*, 69 Misc 2d 763.) II. The Court should not defer to the New York City Department of Parks and Recreation's determination that the proposed restaurant is a park use. (*Friends of Van Cortlandt Park v City of New York*, 95 NY2d 623; *Matter of Ackerman v Steisel*, 104 AD2d 940.) III. The State Legislature fairly considers city proposals to alienate parkland. (*Friends of Van Cortlandt Park v City of New York*, 95 NY2d 623.)

*Friedman Kaplan Seiler & Adelman LLP*, New York City (*Eric Seiler, Jeffrey R. Wang* and *Pearline M. Hong* of counsel), for Union Square Partnership and others, amici curiae. I. The Commissioner of the New York City Department of Parks and Recreation's decision is supported by a substantial segment of the Union Square Park Community and is entitled to the wide deference that New York City's Charter provides. (*795 Fifth Ave. Corp. v City of New York*, 40 Misc 2d 183, 15 NY2d 221; *Kaskel v Impellitteri*, 306 NY 73; *Williams v Gallatin*, 229 NY 248; *Friends of Van Cortlandt Park v City of New York*, 95 NY2d 623.) II. The Commissioner of the New York City Department of Parks and Recreation's approval of the proposed restaurant is reasonable. (*795 Fifth Ave. Corp. v City of New York*, 40 Misc 2d 183; *Friends of Van Cortlandt Park v City of New York*, 95 NY2d 623.)

*Carter Ledyard & Milburn LLP*, New York City (*Christopher Rizzo* and *Holly Leicht* of counsel), for New Yorkers for Parks, amicus curiae. The license between the City of New York and Chef Driven Market, LLC meets the requirements of the public trust doctrine. (*Friends of Van Cortlandt Park v City of New York*, 95 NY2d 623; *Williams v Gallatin*, 229 NY 248; *Miller v City of New York*, 15 NY2d 34; *795 Fifth Ave. Corp. v City of New York*, 40 Misc 2d 183.)

*Pace Environmental Litigation Clinic, Inc.*, White Plains (*Daniel E. Estrin* of counsel), for Raritan Baykeeper, Inc. and another, amici curiae. Purported common-law park use "findings" and/or "determinations" by municipalities should be subject to de novo review by New York courts. (*Brooklyn Park Commrs. v Armstrong*, 45 NY 234; *Friends of Van Cortlandt Park v City of New York*, 95 NY2d 623; *Williams v Gallatin*, 229 NY 248; *Aldrich v City of New York*, 208 Misc 930; *Miller v City of New York*, 15 NY2d 34; *Matter of Ackerman v Steisel*, 104

AD2d 940, 66 NY2d 833; *Chatham Green v Bloomberg*, 1 Misc 3d 434; *Matter of Powell v City of New York*, 16 Misc 3d 1113[A], 2007 NY Slip Op 51409[U]; *Tobin v Hennessy*, 129 Misc 756, 220 App Div 695; *Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225.)

## OPINION OF THE COURT

GRAFFEO, J.

Plaintiffs challenge an agreement by the New York City Department of Parks and Recreation to allow the operation of a restaurant in Union Square Park. We conclude that plaintiffs fail to state a claim for a violation of the public trust doctrine and therefore affirm the Appellate Division order dismissing the complaint.

Union Square Park occupies approximately 3.6 acres in Lower Manhattan. Dating back to the early 1800s, the park has been the site of various public gatherings, protests and marches, and was designated as a national historic landmark by the United States Department of the Interior. A colonnaded pavilion, the structure at issue on this appeal, stands in the paved plaza at the northern end of the park. In 2008, as part of a citywide restoration initiative, the New York City Department of Parks and Recreation (the Department) renovated portions of the park, including the pavilion area. The project included the future use of the pavilion as a restaurant to replace Luna Park, a café that had operated in a space adjacent to the pavilion from 1994 until 2007.

In 2012, the Department executed a written "License Agreement" with Chef Driven Market, LLC (CDM), which permitted CDM to operate a seasonal restaurant in the pavilion for a term of 15 years. The restaurant would be open from mid-April to mid-October each year, from 7:00 a.m. until midnight on a daily basis. In return, CDM agreed to pay the City an annual license fee of $300,000 in the first year (increasing to about $450,000 in the final year) or 10% of annual gross receipts, whichever amount was greater. The agreement further obligated CDM to outlay at least $700,000 in specified capital improvements.

The Department retained extensive control over the daily operations of the restaurant under the terms of the agreement. For example, the Department "must approve in advance and in writing all plans, schedules, services, hours of operation, menu items and prices as well as all changes to services, menu items,

merchandise, and any increase in fees and prices." The preapproved menu must include breakfast items ranging from $1.95 to $15.95; brunch options costing $2.95 to $19.95; and lunch and dinner sandwiches and entrees at prices of $8.95 to $33.95. Outdoor seating would remain open to the public as well as paying customers. The agreement also required CDM to use Union Square Park Greenmarket vendors as suppliers and to offer a number of community programs, including free weekly educational programs; at least 10 annual charity fundraising events; and culinary internships for local students. Finally, the agreement contains a broad termination clause in favor of the Department:

> "[T]his License is terminable at will upon written notice by the Commissioner at any time; however, such termination shall not be arbitrary and capricious. Such termination shall be effective twenty-five (25) days after the date of such written notice . . . In addition, in the event this License Agreement is terminated, [the Department] will not reimburse Licensee's unamortized capital improvement cost."

Plaintiffs Union Square Park Community Coalition, Inc. and several individuals brought this action against the Department, its Commissioner, the City of New York and CDM (collectively, the Department) seeking a declaratory judgment and injunctive relief restraining the Department from altering the park pavilion to accommodate the restaurant under the public trust doctrine. As relevant to this appeal, plaintiffs asserted two claims: (1) the restaurant constituted a nonpark purpose and was unlawful absent legislative approval and (2) the agreement between the Department and CDM constituted a lease, not a license, thereby amounting to an improper alienation of parkland.[1] Plaintiffs moved for a preliminary injunction and the City cross-moved to dismiss the complaint under CPLR 3211 (a) (1) and (7). The City contended that the restaurant served a valid park purpose by providing a unique, reasonably-priced dining experience that would promote park safety during evening hours when the park would otherwise be less heavily trafficked, and that the documentary evidence demonstrated that the agreement was a valid license.

---

1. Plaintiffs brought a third claim against the Department and Urban Space Holdings, Inc. relating to the use of another section of Union Square Park for a holiday market. Plaintiffs do not press this claim on appeal and we therefore do not address it.

Supreme Court granted plaintiffs' request for a preliminary injunction and denied the City's cross motion to dismiss (38 Misc 3d 1215[A], 2013 NY Slip Op 50110[U] [2013]). The Appellate Division reversed, denied the motion for a preliminary injunction and granted dismissal of the complaint, concluding that the seasonal restaurant did not violate the public trust doctrine and that the concession agreement was a revocable license terminable at will, not a lease (107 AD3d 525 [1st Dept 2013]). We granted plaintiffs leave to appeal (21 NY3d 1070 [2013]).

Under the public trust doctrine, dedicated parkland cannot be converted to a nonpark purpose for an extended period of time absent the approval of the State Legislature (*see Friends of Van Cortlandt Park v City of New York*, 95 NY2d 623, 630 [2001]).[2] Plaintiffs, supported by various amici curiae, acknowledge that it is possible for a restaurant to serve a park purpose, but assert that each food establishment must be assessed on a case-by-case basis under a flexible, multifactor analysis. They contend that the relevant factors in this case indicate that the pavilion restaurant proposed by the Department would not serve valid park purposes because Union Square Park is too small to host a restaurant; there are already a number of restaurants in the immediate vicinity; the menu offerings are too expensive; and the pavilion area could be put to better neighborhood use, e.g., as a site for public speaking and discourse, or dance and yoga classes.

Plaintiffs' position, however, is inconsistent with *795 Fifth Ave. Corp. v City of New York* (15 NY2d 221 [1965]), our most recent precedent involving a challenge to the placement of a restaurant in a city park under the public trust doctrine. In that case, plaintiffs brought suit to enjoin construction of a restaurant in Central Park, asserting that the public trust doctrine would be violated because the new structure would result in the destruction of 22,000 acres of rural area; there were numerous eating and drinking establishments in the vicinity; the corner was already heavily congested; and the proposed restaurant would principally serve pedestrians entering from the adjacent street rather than park patrons. Following a bench trial, the trial court rejected plaintiffs' claims and concluded that the restaurant served a legitimate park purpose. In reaching its decision, the trial court relied on a number of considerations, including that the undeveloped area was unused and

---

**2.** It is undisputed that the Department did not obtain legislative authorization for the restaurant.

unsightly; the menu prices were reasonable; and the restaurant would be housed in an attractive glass-enclosed pavilion, which would "enhance the beauty and natural appeal of the southeast corner of Central Park" (40 Misc 2d 183, 190 [Sup Ct, NY County 1963]).

When *795 Fifth Ave.* reached us on appeal, we affirmed, but on broader grounds. We began by acknowledging that the "Park Commissioner is vested by law with broad powers for the maintenance and improvement of the city's parks" and that judicial interference would be "justified only when a total lack of power is shown" (15 NY2d at 225 [internal quotation marks and citation omitted]). In other words, although it is for the courts to determine what is and is not a park purpose, we recognized that the Commissioner enjoys broad discretion to choose among alternative valid park purposes. Observing that restaurants have long been operated in public parks, we rejected plaintiffs' public trust claim, holding that they could show only a "difference of opinion" as to the best way to use the park space and that this "mere difference of opinion [was] not a demonstration of illegality" (*id.*). Without showing the "type and location of the restaurant to be unlawful," we concluded, plaintiffs could not prevail (*id.* at 226). We therefore found it unnecessary to consider the myriad factors the trial court had relied upon, including whether the building was well-designed and would replace a neglected area of the park.

■ Although there are significant differences in the size, characteristics and uses of Central Park and Union Square Park, we perceive no meaningful distinction between *795 Fifth Ave.* and the case before us in the application of the public trust doctrine. Plaintiffs ask us to apply a flexible standard that takes into consideration a number of fact-specific criteria in deciding whether a given restaurant serves a park purpose, yet we eschewed that approach in *795 Fifth Ave.* Even accepting as true the allegations in plaintiffs' complaint, their claims are substantially similar to the ones we found insufficient in *795 Fifth Ave.* Plaintiffs have a different view of the best use of Union Square Park and its pavilion in particular, but this difference of opinion, without more, does not demonstrate the illegality of the Department's plan. Put differently, plaintiffs have not demonstrated that the "type and location" of the restaurant are unlawful. While we leave open the possibility that a particular restaurant might not serve a park purpose in a future case, we conclude that the restaurant here does not run afoul of the public trust doctrine for lack of a park purpose.

Alternatively, plaintiffs argue that the restaurant plan is unlawful even if it serves a park purpose because the agreement between the Department and CDM is a lease rather than a license. They assert that the document in question, though denominated a license, is in reality a lease—an illegal alienation of parkland. The Department responds that, read as a whole, and particularly in light of the broad termination clause, the agreement evinces a valid license, not a lease.

We have stated that parkland cannot be leased, even for a park purpose, absent legislative approval (*see Van Cortlandt Park*, 95 NY2d at 630; *see also* General City Law § 20 [2] [providing that "the rights of a city in and to its . . . parks . . . are hereby declared to be inalienable"]). The Department may, however, execute a license or permit for a park purpose without violating the public trust doctrine (*see Miller v City of New York*, 15 NY2d 34, 37 [1964] ["Since the property was as a park impressed with a trust for the public it could not without legislative sanction be alienated or subjected to anything beyond a revocable permit"]). The decisive question on plaintiffs' second claim, therefore, is whether the agreement between the Department and CDM constitutes a lease or a license.

A document is a lease "if it grants not merely a revocable right to be exercised over the grantor's land without possessing any interest therein but the exclusive right to use and occupy that land" (*id.* at 38). It is the conveyance of "absolute control and possession of property at an agreed rental which differentiates a lease from other arrangements dealing with property rights" (*Feder v Caliguira*, 8 NY2d 400, 404 [1960]). A license, on the other hand, is a revocable privilege given "to one, without interest in the lands of another, to do one or more acts of a temporary nature upon such lands" (*Trustees of Town of Southampton v Jessup*, 162 NY 122, 126 [1900]; *see also Lordi v County of Nassau*, 20 AD2d 658, 659 [2d Dept 1964], *affd without op* 14 NY2d 699 [1964] ["Generally, contracts permitting a party to render services within an enterprise conducted on premises owned or operated by another, who has supervisory power over the method of rendition of the services, are construed to be licenses"]). That a writing refers to itself as a license or lease is not determinative; rather, the true nature of the transaction must be gleaned from the rights and obligations set forth therein. Finally, a broad termination clause reserving to the grantor "the right to cancel whenever it decides in good faith to do so" is strongly indicative of a license as opposed to a lease (*Miller*, 15 NY2d at 38).

■ Here, the language of the agreement confirms that it is what it purports to be—a revocable license. The Department retained significant control over the daily operations of the restaurant, including the months and hours of operation, staffing plan, work schedules and menu prices. Moreover, CDM's use of the premises is only seasonal, and is not exclusive even in the summer, as outdoor seating is required to be available to the general public (with the exception of an area reserved for the service of alcoholic beverages) and CDM is obligated to open the pavilion to the public for community events on a weekly basis. The agreement also contains numerous environmental and community-based provisions. Aside from complying with extensive environmental standards, CDM is required, for example, to use Greenmarket vendors, offer culinary internships and host charitable events. More importantly, the agreement broadly allows the Department to terminate the license at will so long as the termination is not arbitrary and capricious. Consequently, despite the 15-year term and payment structure, we agree with the Department that it entered into a valid license arrangement with CDM.

In sum, the Department's grant of a license to CDM to operate a seasonal restaurant in the Union Square Park pavilion, without legislative approval, was lawful under our precedents.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs.

Chief Judge LIPPMAN and Judges READ, SMITH, PIGOTT, RIVERA and ABDUS-SALAAM concur.

Order, insofar as appealed from, affirmed, with costs.