Archer 1 LLC v Rivera (2024 NY Slip Op 50595(U))

[*1]

Archer 1 LLC v Rivera

2024 NY Slip Op 50595(U)

Decided on May 20, 2024

Civil Court Of The City Of New York, Queens County

Schiff, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 20, 2024
Civil Court of the City of New York, Queens County

Archer 1 LLC a/k/a ONE ARCHER LLC, Petitioner-Landlord,

against
Giselle Rivera, Respondent-Licensee, and JOHN DOE and JANE DOE, Respondents-Underlicensees.

Index No. L&T 321411/23

Counsel for Petitioner:
BELKIN BURDEN GOLDMAN LLP

Logan J. Schiff, J.

Archer 1 LLC a/k/a One Archer LLC ("Petitioner") commenced this licensee holdover against Giselle Rivera ("Respondent") and her undertenants/occupants John Doe and Jane Doe (collectively "Respondents") seeking to recover possession of Apartment 2017 in the building known as 92-27 160th Street, Jamaica, New York 11433 ("subject premises") upon service and filing of the Petition and Notice of Petition (NYSCEF 1-3), and the affidavit of service for the Notice of Petition and Petition (NYSCEF 4). Respondent's apartment is located within a 315-unit building that is subject to the New York City Rent Stabilization Law ("RSL") by virtue of its receipt of tax abatement pursuant to Real Property Tax Law § 421-a.
The basis of this proceeding is counterintuitive. While Petitioner describes Respondent as a licensee whose license to occupy the premises was revoked following service of ten-day notice to quit, it is undisputed that Respondent moved into possession pursuant to a fully executed one-year rent-stabilized lease. According to Petitioner, Respondent is a licensee rather than a tenant by virtue of the "early occupancy licensee rider" incorporated into the lease, which allowed Respondent to live in the apartment for two months before her monthly rental obligations [*2]commenced and provides that the license may be terminated upon service of a 10-day notice to quit in compliance with RPAPL 713. According to Petitioner, Respondent's payment for the security deposit and first month's rent failed to clear, and therefore her license never ripened into a rent-stabilized tenancy by virtue of her failure to provide adequate consideration for the lease.
Following the non-appearance of Respondent on February 27, 2024, and May 2, 2024, the court conducted an inquest on May 2, 2024. Andrew Phillips, an employee for Petitioner, testified and the court admitted into evidence the certified deed, certified multiple dwelling registration, certified DHCR rent registration history reflecting that the building is a new construction with an initial first registered rent in 2022, the fully executed one-year vacancy lease between the parties with a monthly rent of $2,680 and a term of one year commencing December 6, 2023 and expiring December 5, 2024 and preceded by an early occupancy period of October 6, 2023 through December 5, 2023, and a rental ledger reflecting $18,430 in rental arrears owed through May 2024. Mr. Phillips testified that Respondent is a licensee rather than a tenant because of the early occupancy rider, and that Respondent's payment for the first month of rent and security deposit bounced due to insufficient funds, and that she has failed to pay rent since then.[FN1]

At the court's request, Petitioner submitted a post-inquest memorandum of law on May 16, 2024, as to the legal issue of whether Respondent is a licensee rather than a tenant, which the court has considered in addition to the evidence presented at inquest.
In the context of real property, what defines the relationship between the parties "is not its characterization or the technical language used in the instrument, but rather the manifest intention of the parties" (American Jewish Theatre v Roundabout Theatre Co., 203 AD2d 155, 156 [1st Dept 1994]). Whereas a license merely affords the licensee revocable permission to use or occupy a portion of the grantor's property, it is the "conveyance of absolute control and possession of property at an agreed rental which differentiates a lease from other arrangements dealing with property rights" (see Union Sq. Park Community Coalition, Inc. v New York City Dept. of Parks & Recreation, 22 NY3d 648 [2014] [internal quotation and citation omitted]; see also Rucks v Sunderland, 27 Misc 3d 133[A] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2010]).
Here, it is undisputed that Respondent took exclusive possession of the subject premises pursuant to a fully executed lease that set a monthly rental amount over a fixed duration, material terms that demonstrate the existence of a lease rather than a license (see Coinmach Corporation v Harton Assocs., 304 AD2d 705 [2d Dept 2003]). Accordingly, Respondent's occupancy cannot be characterized as that of a licensee rather than a tenant, notwithstanding the use of such jargon in the lease, and the predicate termination notice premised on the revocation of a license is fatally defective (see Hok Kwan Chu v Lee, 39 Misc 3d 147 [App Term, 2d Dept, 2d, 11th & [*3]13th Jud Dists 2013] [where petitioner failed to establish that respondent was not in exclusive possession respondent was at the very least a tenant at will entitled to a thirty day notice under RPL § 228]; Rodriguez v Greco, 31 Misc 3d 136[A] [App Term, 2d Dept, 9th & 10th Jud Dists 2011]).
Further undermining Petitioner's assertion that Respondent is a mere licensee is the fact that the subject apartment is rent-stabilized and subject to a "lease-based statutory scheme" (Pald Enters v Gonzalez, 173 Misc 2d 681 [App Term, 2d Dept, 2d & 11th Jud Dists 1997]; see also Fairfield Beach 9th, LLC v Shepard-Neely, 74 Misc 3d 14 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021] [a rent-stabilized tenant retains all rights so long as they remain in possession and such tenancy "cannot be monthly because the respective rights and responsibilities of a landlord and tenant under a month-to-month tenancy cannot be reconciled with the respective rights and responsibilities of a landlord and tenant of a rent-stabilized apartment."]). The Rent Stabilization Law and Code require a landlord renting a rent-stabilized apartment to offer an incoming tenant a one- or two-year vacancy lease, which must comport with the Code in all respects and attach a statutorily mandated rider describing tenant's rights and obligations and the basis for calculating the initial rent (see RSL § 26-511(c)(4); 9 NYCRR § 2522.5(c)(1); 160 Eagle St., LLC v Butler, 58 Misc 3d 398 [Civ Ct, Kings Co 2017]). Once a rent-stabilized tenancy is created, it can only be terminated after service of a notice enumerating a ground for eviction authorized under the Rent Stabilization Code (see 9 NYCRR § 2524.2). While a landlord is free to include certain material terms in a vacancy lease, the violation of which may provide a ground for eviction, for instance a no pet provision or limitations on alterations, nothing in the Code authorizes the inclusion in a rent-stabilized lease of a rider allowing the landlord to deem the lease a nullity after the tenant has taken occupancy. Moreover, any "agreement by [a rent-stabilized] tenant to waive the benefit of any provision of ...this Code is void" (9 NYCRR § 2520.13). Accordingly, the court finds that the "early occupancy rider" in the parties' agreement, to the extent it can be interpreted as impairing Respondent's rent-stabilized rights flowing from her fully executed lease by authorizing an eviction based on a 10-day notice to quit, is unenforceable as against public policy (see 1010 Realty v Dixon, 72 Misc 3d 127[A] [[App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021]; 164-03, LLC Poblete, 66 Misc 3d 150[A] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2020]; Bedford Apts. Co. v Lewison, 4 Misc 3d 139 [A] [App Term, 1st Dept 2004]). Therefore, because this proceeding was not preceded by a termination notice stating a ground for eviction under the Rent Stabilization Code, the predicate notice to quit is fatally defective (see Kings Highway Realty Corp. v Riley, 35 Misc 3d 127[A] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021]).
Accordingly, for the foregoing reasons, Petitioner's request for a judgment after inquest is denied and this proceeding is dismissed without prejudice to commencement of either a nonpayment proceeding for failure to pay rent due under the unexpired lease, or a holdover based on an enumerated ground in the Rent Stabilization Code after service of a proper termination notice. This constitutes the decision and order of the court.
Dated: May 20, 2024
Queens, New York
Hon. Logan J. Schiff, J.H.C.

Footnotes

Footnote 1:It is unclear from the record why Petitioner allowed Respondent to move in without paying rent for the first two months of occupancy. However, to the extent the purported license was an attempt to preserve a higher first rent-stabilized rent than the market would support by mischaracterizing the agreement as a 12-month lease preceded by a 2-month license rather than a 14-month lease, such arrangement is impermissible (see Bascom v 1875 Atl. Ave Dev. LLC, 2024 NY Slip Op 02515 [2d Dept 2024]; Chernett v Spruce 1209, LLC, 200 AD3d 596 [1st Dept 2021]).