**City of New York v Heritage Health & Hous., Inc.**

2025 NY Slip Op 31022(U)

March 31, 2025

Supreme Court, New York County

Docket Number: Index No. 451964/2023

Judge: Jeanine R. Johnson

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 52M

-------------------------------------------------------------------------------X

THE CITY OF NEW YORK, NEW YORK CITY HEALTH
AND HOSPITALS CORPORATION,

|  |  |  |
|---|---|---|
| **INDEX NO.** | 451964/2023 |

Plaintiff,

**MOTION DATE** 10/23/2023

- v -

**MOTION SEQ. NO.** 001

HERITAGE HEALTH AND HOUSING, INC., "JOHN OR
JANE DOE NOS. 1 THROUGH 10," and "XYZ CORP.," the
latter defendants being unknown to the plaintiff, and those
designations being intended to represent persons or
parties, including but not limited to any mortgagees,
tenants, sub-tenants, occupants, persons or corporations,
having or claiming any interest in or lien upon the property
described in the complaint, or in any way present on said
property without the consent of the plaintiff,

**DECISION + ORDER ON
MOTION**

Defendant.

-------------------------------------------------------------------------------X

HON. JEANINE R. JOHNSON:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 11, 12, 13, 14, 15,
16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28

were read on this motion to/for                          DISMISSAL                          .

In this action, plaintiffs The City of New York ("the City") and New York City Health

and Hospitals Corporation ("HHC") allege that defendant Heritage Health and Housing, Inc.

("Heritage"), along with John or Jane Doe defendants, occupy portions of the building located at

1727 Amsterdam Avenue in Harlem ("the Property") without permission, and they seek an order

of ejectment and a declaration that plaintiffs have the right to sole possession of the Property

(NYSCEF Doc. No. 17 [Complaint]). Currently before this Court is Heritage's pre-answer

motion to dismiss based on documentary evidence (CPLR § 3211 [a] [1]) and failure to state a

claim (CPLR § 3211 [a] [7]). The Court **DENIES** the motion as detailed below.

As this is a pre-answer motion to dismiss, the Court accepts the allegations in the

complaint as true (*see Sassi v Mobile Life Support Servs., Inc.*, 37 NY3d 236, 239 [2021]).

451964/2023   THE CITY OF NEW YORK ET AL vs. HERITAGE HEALTH AND HOUSING, INC. ET
AL
Motion No. 001

Page 1 of 12

1 of 12

[* 1]

According to the complaint, the City acquired the Property on June 2, 1969, pursuant to a condemnation proceeding. The Property is under the jurisdiction of HHC, which granted Heritage possession of portions of the building pursuant to a three-year license agreement dated September 1, 2014 (NYSCEF Doc. No. 14). Heritage remained in occupancy of this portion of the Property without objection after the Agreement expired.

On March 29, 30, and 31, 2023, however, HHC served Heritage with a termination notice effective June 15, 2023. Despite this and despite the issuance of a 10-day notice to quit dated June 21, 2023, Heritage has remained in the Property. As such, plaintiffs assert two causes of action. The first, for ejectment, seeks

> "an order and/or judgment ejecting Heritage, and any other persons claiming any right of use or occupancy under or through Heritage, and directing them to fully remove all of her, his, its and/or their personal property from the Property, with execution thereon, and directing the Sheriff of the City of New York to put the Plaintiffs into possession of any portion of the Property occupied by the Defendants" (*id.*, ¶ 26).

The second cause of action, for trespass, also seeks ejectment, along with a declaration from this Court "that the Plaintiffs are entitled to sole possession of all portions of the Property occupied by each or any of the Defendants" and a permanent injunction that prevents "them from using or occupying any portion of the Property" (*id.*, *7 [B]).

Heritage's motion to dismiss rests on its argument that the Agreement is actually a lease, despite the fact that the document refers to it as a license.[1] Citing *Women's Interart Ctr., Inc. v New York City Economic Dev. Corp.* (97 AD3d 17, 21 [1st Dept 2012]) and *Union Sq. Park Community Coalition, Inc. v New York City Dept. of Parks & Recreation* (22 NY3d 648, 656 [2014] [*Union Sq. Park*]), it notes that courts must examine agreements as a whole to determine

---

[1] As the dispute at hand centers on whether the Agreement is a license or a lease, in its discussion, the Court will refer to the document as "the Agreement."

**451964/2023   THE CITY OF NEW YORK ET AL vs. HERITAGE HEALTH AND HOUSING, INC. ET AL**
**Motion No.  001**

**Page 2 of 12**

the intent of the parties. More specifically, it notes that documents that grant a party "absolute control and possession of property at an agreed rental" are leases while those that convey "a revocable right to be exercised over the grantor's land without possessing any interest therein" is a license (*Union Sq. Park*, 22 NY3d at 656 [internal quotation marks and citations omitted]).

In support of its contention that the Agreement is a lease based on the above standards, Heritage submits a copy of the Agreement (NYSCEF Doc. No. 14). It points to several provisions in the Agreement that allegedly support its position. For instance, paragraph two states that on September 1, 2014, Health and Hospitals "shall deliver possession of the Licensed Space on the 3rd Floor of the Building vacant and free of any tenancies," and it acknowledged that Heritage had been in possession of first, second, and fourth floors – the remainder of the space covered by the Agreement – for around 20 years. Paragraph 17 grants Heritage full access to the Property "at all times of the day and night throughout the year." The Agreement also states that Heritage was required to provide its own security (*id.*, ¶ 5), to make non-structural repairs (*id.*), to maintain and clean the Property (*id.*) and, upon consent by HHC, to renovate the Property (*id.*, ¶ 7). Heritage points out that the Agreement gave Heritage absolute possession and control of the Property free of encumbrances, required Heritage to pay rent, gave Heritage full access to the Property without any temporal restrictions, and included indemnification and insurance provisions commonly found in leases (*id.*, ¶¶ 8-9). Accordingly, it contends that the document unquestionably is a lease (citing, inter alia, *Solomon & Cramer LLP v Times Sq. Suites LLC*, 2021 NY Slip Op 31388 [U], *4 [Sup Ct, NY County 2021]).

It is undisputed that Heritage remained on the Property for years after the Agreement's September 1, 2017 expiration date. Heritage further notes that it has continued to make monthly rental payments – payments which HHC accepted until May 2023. Heritage argues that because

451964/2023   THE CITY OF NEW YORK ET AL vs. HERITAGE HEALTH AND HOUSING, INC. ET AL
Motion No.  001

Page 3 of 12

3 of 12

[* 3]

the Agreement is a lease, upon its expiration Heritage became a month-to-month tenant (citing *Weiden v 926 Park Ave. Corp.*, 154 AD2d 308, 308-309 [1st Dept 1989]). Also, due to its characterization of the Agreement as a lease, Heritage asserts that it is entitled to the protections that go along with its status as a tenant (citing, inter alia, *American Jewish Theatre v Roundabout Theatre Co.*, 203 AD2d 155, 156 [1st Dept 1994]). According to Heritage, before HHC commenced an ejectment action, it had to provide Heritage with a six-month notice rather than the two-month termination notice it received. Heritage argues that, even if the Court determines that there is no six-month notice requirement, plaintiff did not comply with the procedural thresholds. Heritage reiterates that when it held over for an undefined period, a month-to-month tenancy was created (*see* NYSCEF Doc. No. 18, *11 [B]), triggering the notice and service requirements in RPL § 232-a and RPAPL § 735.

Another problem, according to Heritage, is that since 2019, around three years before they issued the termination notice, plaintiffs already had planned to demolish the Property. Despite this, the notice to both Heritage and the community at large was abrupt and unexpected. Heritage includes a copy of Manhattan Community Board 9's ("MCB") June 20, 2023 letter strenuously objecting to plaintiffs' decision and accusing the City of circumventing a mandatory ULURP review (NYSCEF Doc. No. 16).

According to Heritage, but HHC avoided its obligations under the Agreement. Specifically, Heritage points to the statement in the Agreement that "[i]n the event of any disputes, the parties shall meet and attempt in good faith to find a resolution in recognition of their shared interest of promoting the health of the residents of Harlem and their shared not-for-profit structure" (NYSCEF Doc. No. 14, ¶ 18). Heritage intimates that plaintiffs did not notify Heritage in advance so that it could begin a timely search for a new space. Also, Heritage

451964/2023   THE CITY OF NEW YORK ET AL vs. HERITAGE HEALTH AND HOUSING, INC. ET AL
Page 4 of 12
Motion No.  001

4 of 12

[* 4]

indicates that it now has found a new location that it can renovate and use for its current purposes if the Landmarks Preservation Board and the New York City Department of Buildings approve its applications. As of October 20, 2023, the date of Mr. Blomberg's affidavit, Heritage estimated that it would be ready to move to the new facility in 18 to 24 months. The implication is that plaintiffs have not worked with Heritage so that it can remain in the Property pending the completion of the new facility.

Heritage also contends that the trespass cause of action must be dismissed. In support, it relies on *Eden Roc, LLLP v Marriott Intl., Inc.* (116 AD3d 486 [1st Dept 2014] [*Eden Roc*]). In *Eden Roc*, the First Department affirmed the trial court's dismissal of the hotel owner's trespass action because "it [was] not based on any tort obligation that was apart from and independent of defendants['] . . . obligation under the management agreement . . ." (*id.* at 487). Heritage contends that here, the trespass claim does not arise from its alleged duty to vacate under the Agreement. Accordingly, Heritage states, the trespass cause of action is duplicative of the ejectment claim.

Finally, Heritage argues the equities that militate in its favor. According to the affidavit of Douglas Blomberg, Heritage's Chief Financial Officer, "The Heritage Health Care Center provides essential health care, dental, and behavioral and mental health services to the medically underserved community of Harlem" (NYSCEF Doc. No. 12 [Blomberg Aff], ¶ 2). Mr. Blomberg notes that most of Heritage's patients are people of color or members of a minority group. Over half receive Medicaid benefits, 18 percent receive Medicare, 15 percent have private insurance, and the remaining 10 percent are uninsured (*id.*, ¶¶ 7-8). He states that any abrupt ejectment from the Property would be devastating, as so many of these patients rely upon Heritage for their medical care and social services.

[* 5]

In opposition, plaintiffs adhere to their position that the Agreement between the parties constituted a license and, as such, Heritage's arguments lack merit. For one thing, they state that the Agreement makes the nature of the document clear. Not only does it consistently refer to the Agreement as a lease, but paragraph 13 (a) states that "[n]othing herein contained shall be deemed create {sic} a relationship of landlord and tenant between the parties with respect to the Licensed Space" (*id.*). Even more significantly, they cite to As plaintiffs note, "[e]ither party to this License Agreement shall have the absolute right to terminate this License Agreement without cause upon sixty days' notice to the other party" (NYSCEF Doc. No. 14, ¶ 6 [b]).

They submit the affidavit of Jeremy Berman, a deputy general counsel at HHC, which states, among other things, that despite the inclusion of this provision, Heritage did not pursue such conversion (NYSCEF Doc. No. 22, ¶¶ 17-18). Further, they contend because the Agreement was a license, ULURP and RPL § 232-a do not apply; and, because plaintiffs have commenced an ejectment and trespass action rather than a summary proceeding, RPAPL Article 7 is inapplicable (NYSCEF Doc. No. 27, *8, citing *475 Bldg. Co., LLC v Landmark Ventures [USA] Inc.*, 2022 NY Slip Op 30307 [U], *3-4 [Sup Ct, NY County 2022]). Instead, it relies on RPAPL § 713 (7), which provides that a ten-day notice to quit is sufficient where a licensor-licensee relationship exists.

Additionally, plaintiffs stress that, as the First Department stated in *Z. Justin Mgt. Co., Inc. v Metro Outdoor, LLC* (137 AD3d 577, 578 [1st Dept 2016] [internal quotation marks and citations omitted]),

> "The nature of the transfer of absolute control and possession is what differentiates a lease from a license . . . [w]hereas a license connotes use or occupancy of the grantor's premises, a lease grants exclusive possession of designated space to a tenant, subject to rights specifically reserved by the lessor. The former is cancellable at will, and without cause. The critical question in determining the

existence of a lease . . . is whether exclusive control of the premises has passed to the tenant."

Here, plaintiffs contend that several elements of the Agreement show that HHC did not grant exclusive possession and control of the Property to Heritage. They note that, in paragraph one of the Agreement, HHC only grants Heritage "a license to enter upon and use" the space, not to control it exclusively (NYSCEF Doc. No. 14). Further, although the term of the Agreement is three years, either party had "the absolute to terminate this License Agreement without cause upon sixty days' notice to the other party" (*id.*, ¶ 6 [b]).

Plaintiffs also contend that the Agreement cannot be a lease because HHC did not follow the prerequisites for entering into such an agreement. They stress that under New York City Charter § 384 (a), "[n]o real property of the city may be sold, leased, exchanged or otherwise disposed of except with the approval of the mayor and as may be provided by law. . . ." The charter goes on to elaborate that the sale or lease must be at the highest marketable rental; that after advertisements appear in the City Record, there shall be either a public auction or the submission of sealed bids; that the agency can only lease property where there has been an appraisal no more than six months before the lease's authorization date (*id.*, § [b] [1-3]). Plaintiffs cite *Henry Modell & Co. v City of New York* (159 AD2d 354 [1st Dept 1990]) for the proposition that the Agreement cannot be a lease because HHS did not follow this mandated procedure.

Finally, based on the above, plaintiffs argue that the complaint states viable causes of action for ejectment and trespass. Quoting *Nomaex, Inc. Domsey Worldwide, Ltd.* (192 AD3d 817, 819 [2d Dept 2021]), they note that an ejectment claim must allege "that (1) [the plaintiff] is the owner of an estate in tangible real property, (2) with a present or immediate right to possession thereof, and (3) the defendant is in present possession of the estate." The complaint

451964/2023   THE CITY OF NEW YORK ET AL vs. HERITAGE HEALTH AND HOUSING, INC. ET AL
Motion No.  001

Page 7 of 12

[* 7]

includes all of these allegations. Further, they point out that the Real Property Actions and Proceedings Law ("RPAPL"), as RPAPL § 641 states, in its entirety, that "[t]he complaint shall state the plaintiff's interest in the property and describe it with reasonable certainty in such manner that, from the description, possession of the property claimed may be delivered." Plaintiffs state that because there is no requirement that the complaint allege that the defendant was provided with timely notice, the service of predicate notice is not a prerequisite to the institution of a complaint. Moreover, they note that the paragraph 6 (b) of the Agreement states that "[e]ither party to this License Agreement shall have the absolute right to terminate this License Agreement without cause upon sixty days' notice to the other party" (NYSCEF Doc. No. 14) and they assert that they notified Heritage more than sixty days before the eviction date. Also, they assert that they complied with the service requirement in paragraph 15 of the Agreement (*id.*).

As for trespass, they note that a viable cause of action exists if a defendant who had permission to be on property refused to leave after such permission was withdrawn (NYSCEF Doc. No. 27, *9, quoting *Shrage v Con Edison Co.*, 216 AD3d 1023, 1025 [2d Dept 2023]). As the city owns the Property and HHC manages it, they state that this gives them the right to commence a trespass action. Plaintiffs state that Heritage's reliance on *Eden Roc* is misplaced, as that case involved a trespass claim that was not distinct from the plaintiff's breach of contract claim. Here, plaintiffs state, there is no contractual claim at issue because the Agreement expired in 2017. Therefore, they argue that there is no duplication of a contract cause of action.

In reply, Heritage reiterates that the Agreement created a lease between HHC and Heritage, and that when it held over with the consent of HHC, a month-to-month tenancy was created. For this reason, Heritage maintains that the six-month notice requirement applies.

451964/2023   THE CITY OF NEW YORK ET AL vs. HERITAGE HEALTH AND HOUSING, INC. ET          Page 8 of 12
AL
Motion No.  001

8 of 12

[* 8]

The Court has carefully considered the parties' arguments, and after such consideration, it denies the motion to dismiss. First, Heritage has not shown that dismissal is proper under CPLR § 3211 (a) (1). "When reviewing a pre-answer motion to dismiss the complaint for failure to state a cause of action, [courts] must give the pleadings a liberal construction, accept the allegations as true and accord the plaintiff[] every possible favorable inference" (*Sassi*, 37 NY3d at 239 [internal quotation marks and citation omitted]). Accepting all of the allegations in the complaint as true, plaintiffs have set forth viable causes of action for ejectment (*see 79 E. LLC v Ofori*, 226 AD3d 464, 465 [1st Dept 2024]; *Olympic Galleria, Co., Inc. v Sitt*, 2025 NY Slip Op 30291 [U], *4-5 [Sup Ct, NY County 2025]) and trespass (*see Shrage*, 216 AD3d at 1025).

Second, the Court considers whether the documentary evidence – that is, the complaint and its attachments, along with the Agreement – establishes Heritage's right to dismissal under CPLR 3211 (a) (1). Courts grant motions under CPLR 3211 (a) (1) "only if the documentary evidence utterly refutes the plaintiff's factual allegations . . . ." (*Eccles v Shamrock Capital Advisors, LLC*, 42 NY3d 321, 343 [2024] [internal quotation marks and citation omitted]). According to Heritage, the Agreement utterly refutes plaintiff's contention that the Agreement is a license. The Court disagrees for several reasons. "What defines the proprietary relationship between the parties is not its characterization or the technical language used in the instrument, but rather the manifest intention of the parties" (*American Jewish Theatre, Inc. v. Roundabout Theatre Co.*, 203 A.D.2d 155, 156, 610 N.Y.S.2d 256 [1994]). Plaintiffs have pointed out numerous provisions in the Agreement which emphasize the parties' intention to create a license agreement, such as the provision that expressly states the Agreement does not create a landlord-tenant relationship. As stated, it is particularly significant that the Agreement states the intention of the parties to convert the license into a lease in the future, subject to all the procedural

451964/2023   THE CITY OF NEW YORK ET AL vs. HERITAGE HEALTH AND HOUSING, INC. ET AL
Motion No.  001

Page 9 of 12

[* 9]

prerequisites (NYSCEF Doc. No. 14, *1). By this language, Heritage arguably acknowledges that the Agreement is not a lease, and that certain steps would have to occur before the license could be converted into a lease. Further, the fact that Heritage had no right to sublease or sublicense any part of the space militates in favor of finding that the agreement was a license (*see East Ramapo Cent. Sch. Dist. v Mosdos Chofets Chaim, Inc.*, 52 Misc 3d 49, 50-51 [App T, 2d Dept 2016]). Thus, the document is not dispositive.

Although *Union Sq. Park*, upon which Heritage relies, holds that an agreement may be a lease, even if titled a license, if it has the attributes of a lease, it also found that "a broad termination clause reserving to the grantor the right to cancel whenever it decides in good faith to do so is strongly indicative of a license as opposed to a lease" (22 NY3d at 656 [internal quotation marks and citation omitted]). As plaintiffs note, "[e]ither party to this License Agreement shall have the absolute right to terminate this License Agreement without cause upon sixty days' notice to the other party" (NYSCEF Doc. No. 14, ¶ 6 [b]). Thus, under *Union Sq. Park*, there is a strong indication that the Agreement is a license.

Additionally, as plaintiffs note, the Agreement did not go through the mandatory approval process. Although HHC has the power "[t]o make and to execute contracts and leases" (McKinney's Uncons Laws of NY [New York City Health and Hospitals Corporation Act ("HHC Act")]) § 7385 [5]), this right is not absolute. Instead, under section six of the same law, HHC cannot lease or otherwise transfer a health facility that is under its jurisdiction "without public hearing by the corporation after twenty days public notice and without the consent of the board of estimate of the city" (HHC Act § 7385 [6]).[2] Further, as plaintiffs note, section 384 (a) of the New York City Charter states that the mayor must approve any lease of real property.

_____

[2] The City Council is the successor to the Board of Estimate (*see Council of City of New York v Giuliani*, 183 Misc 2d 799, 805-806 [Sup Ct, Queens County 1999]).

**451964/2023   THE CITY OF NEW YORK ET AL vs. HERITAGE HEALTH AND HOUSING, INC. ET AL**        **Page 10 of 12**
**Motion No.  001**

[* 10]

Here, as there was neither a public hearing nor approval by the city council and the mayor, Heritage has not satisfied its burden of showing that the parties viewed the agreement as a lease.

Third, the Court does not dismiss the trespass cause of action as duplicative of the ejectment claim. *Eden Roc*, on which Heritage relies for its position, is distinguishable. The trial court dismissed the cause of action because Eden Roc attempted to terminate the management agreement under a contract theory, and did not allege additional elements, such as the commission of an unlawful or unauthorized act, which would have supported a cause of action for trespass (*see Eden Roc, LLLP v Marriott Intl., Inc.*, Sup Ct, NY County, Sept 18, 2013, Schweitzer, J., index No. 651027/2012, *21 [available in NYSCEF case file, Doc. No. 127], *affd* 116 AD3d 486 [1st Dept 2014]). Here, on the other hand, plaintiffs seek additional relief in their second cause of action – that is, they seek declaratory and injunctive relief rather than mere ejectment. Further, it is not unusual for a complaint to assert such causes of action together (*see, e.g., Children's Magical Garden v Marom*, 2023 NY Slip Op 33423 [U] [Sup Ct, NY County 2023]), and Heritage cites no authority stating that trespass is duplicative of ejectment and subject to dismissal on this basis.[3]

Finally, Heritage has not established that plaintiffs have not complied with the existing notice requirements, as it relies on its assumption that it has established the existence of a lease. Even if a lease exists, the agreement includes a notice of termination provision, with which HHC complied. Neither party has established whether this provision overrides the statutory notice requirement. Although Heritage has set forth strong equitable arguments, it has not shown that

---

[3] The Court notes that in its reply, Heritage argues that even if the Court determines that the parties' agreement is a license, a month-to-month tenancy exists. In support, it points to *City of New York v State of New York* (211 AD2d 539, 539 [1st Dept 1995] [*City v State*], *modified* 87 NY2d 982 [1996]). Although Heritage's motion is based on its argument that a month-to-month tenancy exists, the reply papers raise a new basis for its position. Therefore, the Court does not consider it (*see Indymac Bank, F.S.B. v Baroi*, 214 AD3d 414, 415 [1st Dept 2023]).

**451964/2023   THE CITY OF NEW YORK ET AL vs. HERITAGE HEALTH AND HOUSING, INC. ET AL**          **Page 11 of 12**
**Motion No.  001**

[* 11]

these issues come into play in the context of this dispute – and, moreover, does not consider the countervailing issues that led to the City's decision to use the space for another purpose.

Upon the foregoing documents, therefore, it is

ORDERED that the motion to dismiss the complaint is denied; and it is further

ORDERED that, within 30 days of the date of entry of this order, Heritage shall serve and file an answer to the complaint.

This constitutes the Decision and Order of the Court.

20250331112102JRJOHNSON9EB05ABC020649179664012F442FE954

| 3/31/2025 | | | | |
|---|---|---|---|---|
| **DATE** | | | **JEANINE R. JOHNSON, J.S.C.** | |
| **CHECK ONE:** | | CASE DISPOSED | **X** NON-FINAL DISPOSITION | |
| | | GRANTED | **X** DENIED | GRANTED IN PART | OTHER |
| **APPLICATION:** | | SETTLE ORDER | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | | INCLUDES TRANSFER/REASSIGN | FIDUCIARY APPOINTMENT | REFERENCE |

451964/2023   THE CITY OF NEW YORK ET AL vs. HERITAGE HEALTH AND HOUSING, INC. ET AL
Motion No.  001

Page 12 of 12

12 of 12

[* 12]